Clayton J. **CHARBONNET** and Adelaide Tutt, wife of Clayton J. Charbonnet, Plaintiffs-Appellants,

v.

**UNITED STATES of America,**
**Defendant-Appellee.**

No. 71–1648.

United States Court of Appeals,
Fifth Circuit.

Feb. 24, 1972.

Rehearing Denied March 15, 1972.

Henry P. Dart, III, New Orleans, La., for plaintiffs-appellants.

Gerald J. Gallinghouse, U. S. Atty., Claude J. Aucoin, Jr., Asst. U. S. Atty., New Orleans, La., Fred B. Ugast, Acting Asst. Atty. Gen., Gilbert E. Andrews, William A. Friedlander, Attys., Tax Div., Dept. of Justice, Washington, .D. C., for defendant-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

GODBOLD, Circuit Judge:

This tax refund suit arises as a result of the Commissioner's having, by regulation, woven into the fabric of the investment tax credit and credit recapture provisions of the Internal Revenue Code the threads of the Code's Subchapter S provisions. After examining the regulations which are the Commissioner's handiwork, we agree with the District Court's conclusion 320 F.Supp. 874, that

the appellants [1] are not entitled to a refund.

Taxpayer, a resident of Louisiana, was the sole owner of a proprietorship prior to 1965. On January 1, 1965 he formed a corporation, American Rent-All, Inc. (American), to which he transferred all the proprietorship assets in exchange for all the corporation's authorized shares. For its taxable year 1965 American duly elected to report its income as a Subchapter S corporation pursuant to § 1372 of the Internal Revenue Code. According to the Subchapter S pass-through features, the taxpayer reported the corporation's income on his individual 1965 tax return.

During 1965 American invested in § 38 property. As defined in § 48 of the Code, § 38 property generally means tangible personal property and certain other tangible property with respect to which depreciation is allowable and having a useful life of four years or more. Property used predominantly outside the United States is specifically excluded. Section 38 allows the purchaser to apply a direct credit for investment in such property against his income tax liability for the year of purchase. For a Subchapter S corporation, § 48(e) directs that the credit shall be apportioned pro rata among the shareholders on the last day of the taxable year. Accordingly, appellant applied American's investment tax credit to his personal income tax liability, reducing the net tax due.

On October 31, 1966 American declared a stock split. Shares were sold to approximately 110 persons other than taxpayer, who after the sale owned 69.933% of the capital stock. The expansion in ownership disqualified the corporation from further Subchapter S taxation.[2]

On August 25, 1967 appellant executed a voting trust agreement and had issued as a gift to each of his seven children a voting trust certificate representing shares in American, thus making the children beneficial owners of the underlying shares. After this transaction appellant's ownership interest in American's capital stock was reduced to 65.259%.

Shortly thereafter, on October 2, 1967, Treasury Regulation § 1.47–4 was adopted. In 1969 the Commissioner determined that pursuant to § 47(a) of the Code and Treas.Reg. § 1.47–4 taxpayer was liable for a recapture tax in 1967 when his percentage ownership of the former Subchapter S corporation fell below 66⅔%. Appellant paid the additional liability and, after his claim for refund was disallowed, sued for refund in United States District Court. On cross motions for summary judgment, the District Court denied the refund.

The now terminated [3] investment credit provisions were enacted in 1962 [4] to stimulate the economy and improve the balance of payments deficit by promoting investment within the United States in newly acquired productive facilities.[5] The method chosen was a reduction in acquisition cost by credit against tax liability for the year of purchase. IRC §§ 38, 46. To prevent multiple credits by quick turnover of assets,[6] resulting in a loss of revenue without the desired degree of economic stimulus, § 47(a) provides for recapture of investment credit in certain circumstances, the only one concerning us here being set out in § 47(a) (1):

*Early disposition, etc.*—If during any taxable year any property is disposed of, or otherwise ceases to be

---

1. The taxpayers (appellants), husband and wife, are both parties by virtue of having filed a joint tax return. Hereinafter they will be referred to in the singular.

2. IRC § 1371(a) (1) requires that to receive Subchapter S treatment a corporation must have no more than ten shareholders.

3. *See* IRC § 49(a).

4. Revenue Act of 1962, P.L. 87–834, § 2, 76 Stat. 960.

5. S.Rep.No.1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess. pp. 3304, 3313 (1962).

6. S.Rep.No.1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess., p. 3320 (1962).

section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

The Commissioner relies here on the language "otherwise ceases to be section 38 property with respect to the taxpayer" and does not claim that any property was disposed of.

■ Recapture of tax credit from shareholders in former Subchapter S corporations presents a special problem because of Subchapter S pass-through features. Since shareholders of Subchapter S corporations report the corporation's income, they likewise take its tax credit. IRC § 48(e). A problem not shared with the normally taxed corporation arises because the taxpayer who receives tax credit is not the same as the corporate § 38 property owner. A shareholder may receive a tax credit for § 38 property but transfer any or all of his interest in the corporation which retains the property before the expiration of the estimated useful life of the investment for which credit was received.[7] By bailing out early, the taxpayer reaps a tax benefit without himself suffering the risk throughout the estimated useful life. To plug this loop-

hole the Commissioner promulgated Treas.Reg. § 1.47-4, entitled "Electing Small Business Corporations", interpreting § 47(a). Subsection (a) (2) of the regulation, "Disposition of Shareholder's Interest", provides for recapture of a shareholder's credit to the extent of actual reduction if the qualified investment of a Subchapter S corporation has been apportioned to the shareholder and after the taxable year in which the apportionment was taken into account but before the close of the estimated useful life of the property the shareholder's proportionate stock interest in the corporation has been reduced below 66⅔% of the shareholder's proportionate stock interest in the corporation on the date of apportionment.[8] The regulation applies to former Subchapter S corporation shareholders as well as to Subchapter S corporation shareholders.

Recapture occurs because the § 38 property ceases to be such with respect to the taxpayer to the extent of his reduction in interest. That recapture under these circumstances was intended by Congress is clear from the following excerpts of the legislative history:

Additional examples of property ceasing to be section 38 property include (1) property (or a portion thereof) which is no longer subject to depreciation with respect to the taxpayer because, for example, it is shifted from a business to a personal use, and (2) property which is used in any taxable year predominantly outside the United States, by a governmental unit, etc. Similarly, property of a partnership (or *subch. S. corporation* or estate or trust) ceases to be section 38 property with respect to the taxpayer (partner, *shareholder*, or benefi-

7. "Estimated useful life" is used to determine the credit allowable. If the estimated useful life of § 38 property is four to six years, for example, the credit allowable is figured by finding 33⅓% of the basis of new § 38 property placed in service that year and adding to it 33⅓% of the cost of used § 38 property placed in service that year, then multiplying the

aggregate by 0.07 (7%). IRC § 46(a) (1), (c).

8. Since appellant owned 100% of the corporation on the date of apportionment, his stock interest could not fall below 66⅔% without triggering a recapture. He owned 65.259% in the year for which the Commissioner made the assessment inspiring this litigation.

ciary) when such taxpayer sells his interest in the partnership (or *shares of stock* or beneficial interest).

S.Rep. No. 1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess., p. 3450 (1962) (emphasis added).

> If a shareholder includes in his qualified investment any portion of the basis or cost of property acquired by the subchapter S corporation and the corporation subsequently disposes of such property, or *if the shareholder disposes of his stock in such corporation,* the shareholder will be subject to the provisions of section 47 with respect to such property.

S.Rep. No. 1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess., pp. 3464–3465 (1962) (emphasis added). It makes no difference that the history speaks in terms of Subchapter S corporations and not former Subchapter S corporations. Congress evidently was concerned with abuse of the credit by shareholders bailing out prematurely. The potential for abuse is the same regardless of whether a Subchapter S corporation shareholder or a former Subchapter S corporation shareholder bails out, as long as he has received tax credit by virtue of having been a shareholder in a Subchapter S corporation. The tax treatment of the corporation at the time of the shareholder's transfer is irrelevant because the full credit is granted for the year the investment is made.

■ We recognize that a primary purpose for recapture is "to guard against a quick turnover of assets by those seeking multiple credit." [9] But its purpose is not limited to that one end. In the first two examples of property ceasing to be § 38 property (in the history quoted above), recapture does not depend on the possibility of a second taxpayer claiming another credit. Investment in property converted to personal use and use abroad ceases to be § 38 property because it fails to achieve the domestic economic stimulus Congress desired; whereas, investment in property retained in the former Subchapter S corporation even after appellant's bail-out continues as a stimulus to the same extent as before. But the latter investment is unlikely to reflect the considered economic decision Congress wished to encourage. Thus, like the other examples, appellant's overall investment pattern does not fully satisfy the ends of the investment credit and, in Congress' estimation, merits partial recapture of credit.

By promulgating § 1.47–4(a) (2) the Commissioner has made the rules of recapture even more liberal from the taxpayer's viewpoint than he might have under § 47(a). The statute calls for recapture upon *any* property's ceasing to be § 38 property with respect to the taxpayer. Instead of imposing the burdens on taxpayer of reporting and computing recapture after every transfer, and on administrators of constantly policing recapture, the Commissioner determined the 66⅔% limitation as a matter of administrative convenience. The appellant is not in a position to complain of the government's generosity.

■ Finding the regulation neither unreasonable nor plainly inconsistent with § 47(a) or the intent of Congress, we uphold it. Dixon v. United States, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965).

■ The fact that the regulation on which recapture rests was promulgated after the offending stock transfers does not change the result. Regulations do not create law; they merely explain existing legislation. Theoretically, then, we are not called upon to make the law retroactive, only the administrative agency's interpretation of it. It has been held many times, both under §

---

9. S.Rep.No.1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess., p. 3320 (1962).

7805(b) of the Code,[10] *e. g.*, Dixon v. United States, *supra*, Pollack v. Comm'r of Internal Revenue, 392 F.2d 409 (5th Cir. 1968), and in general, *e. g.*, Helvering v. Reynolds, 313 U.S. 428, 61 S.Ct. 971, 85 L.Ed. 1438 (1941), that where no limitations are imposed on Treasury Regulations they are effectively retroactive. We do not hesitate to apply § 1.47–4(a) (2) retroactively, especially where the statute contained a special delegation to the Commissioner to promulgate regulations,[11] the regulation was the first to be issued interpreting the statute, and the regulation was publicly proposed prior to the critical stock transfers.

Appellant attempts to avoid recapture by comfortably arranging himself within the § 47(b) change-in-form exception and then fending off attack with the argument that Treas.Reg. § 1.47–4(a) (2) *is inconsistent with another regulation,* § 1.47–3(f) (1)–(2), and with the intent of Congress, and therefore must succumb.[12] We find no place in the § 47(b) exception for appellant[13] and therefore do not reach the merits of the alleged inconsistency.

Section 47(b) provides:

\* \* \* \* \* \*

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

Appellant reasons that if the recapture provision does not apply when there is a mere change in the form of business, then a fortiori it is inapplicable when there is no change in the form of business, but merely a small change in the taxpayer's interest therein.

■ The legislative history of the exception reveals the following:

The phrase "a mere change in the form of conducting the trade or business" (whether through incorporation, the formation of a partnership, or otherwise) applies only to cases where the properties of a trade or business are transferred. Thus, the transfer of section 38 assets to a newly formed

---

10. *"Retroactivity of regulations or rulings.* —The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect."

11. IRC §§ 38(b), 47(a).

12. The alleged inconsistency inheres in different tests being used to measure the degree of interest in the business that must be retained by the taxpayer to avoid recapture. In the case of a mere change in the form of conducting the trade or business, § 1.47–3(f) (1)–(2) provides that recapture will not result if, among other conditions precedent, the transferor retains a substantial interest in such trade or business. A substantial interest is retained if, after the change in form, the transferor's interest is (1) substantial in relation to the total interest of all persons, or (2) equal to or greater than his interest prior to the change in form.
    With respect to past and present Subchapter S corporation shareholders, § 1.47–3(f) (b) (iv) states that notwith-

standing the above provision in the case of a mere change in form, if the interest of a taxpayer in the trade or business is reduced but such taxpayer has retained a substantial interest in such trade or business, then § 1.47–4(a) (2) applies. That regulation, it will be remembered, calls for a recapture to the extent of actual reduction if and when the taxpayer's proportionate stock interest falls below 66⅔% of his proportionate stock interest on the date of apportionment.
    Appellant alleges an inconsistency between applying the 66⅔% rule in the case of former and present Subchapter S corporation shareholders and utilizing the less rigid substantial interest test in cases involving other taxpayers.

13. Appellant has not argued, and we do not consider, the position that a mere change in form occurred in 1966 when American lost its Subchapter S status and became a normally taxed corporate entity and that therefore the substantial interest test applies, bringing us face-to-face with the inconsistency alleged.

corporation in a transaction to which section 351 applies will not fall within the scope of the exception unless the transaction involves the transfer of the trade or business in which such assets were used.

S.Rep. No. 1881, 87th Cong., 2d Sess.; U.S.Code Cong. & Adm.News, 87th Cong., 2d Sess., p. 3453 (1962). Evidently the purpose of the section is to eliminate loss of a tax credit as a factor to be figured in the calculus of business decision whether to operate in one form or another. The substantial interest requirement serves to insure that the transaction is a bona fide change in form and not a scheme to generate credits.

■ Recapture of credit when a Subchapter S or former Subchapter S corporation shareholder transfers part of his interest serves an altogether different purpose. It prevents taxpayers from receiving windfall benefits when, although they have lent their support previously, they themselves no longer contribute to the purpose of the investment credit.

Thus, the change-in-form exception and the event which in this case causes recapture operate wholly independently of each other. The syllogism that no recapture in case of a *mere* change requires no recapture in the event of *no* change simply ignores that the transfer of ownership has independent significance. Neither premature conversion of § 38 property to personal use or use predominantly abroad nor early destruction of § 38 property is a change in business form, but clearly we would not be required for that reason to hold exempt from recapture the credit already taken for a period when the § 38 property was not actually utilized in accord with the purpose of granting the credit.

Since the exception has no applicability here, the alleged inconsistency between its substantial interest test and the 66⅔% standard of § 1.47–4(a) (2) is irrelevant.

Affirmed.