MITCHELL A. AND NAJLA ABOUSSIE, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1376–69.    Filed July 10, 1973.

*Harold D. Rogers*, for the petitioners.
*William A. Goss*, for the respondent.

WILES, *Judge:* Respondent determined a deficiency in petitioners' income tax for the taxable year 1966 in the amount of $34,011.89. Several issues have been settled by the parties. The remaining issues are (1) whether petitioner retained a substantial interest in a corporation for purposes of determining the applicability of the recapture of investment credit provisions under section 47(a)(1), I.R.C. 1954,[1] and (2) alternatively, whether section 1.47–3(f)(5), Income Tax Regs., is invalid because it is unreasonable and arbitrary.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

Mitchell A. Aboussie (hereinafter called petitioner) and Najla Aboussie are husband and wife who were legal residents of Wichita Falls, Tex., when the petition was filed. They filed their joint Federal income tax return for 1966 with the district director of internal revenue in Dallas, Tex.

Petitioner and his brothers, C. A. Aboussie and T. A. Aboussie, each owned a one-third interest in a partnership called Aboussie Bros. Audio Visual Systems (hereinafter called the partnership) for the period 1962 through March 31, 1966. On April 1, 1966, petitioner and his two brothers formed Aboussie Bros. Audio Visual Systems, Inc. (hereinafter called the corporation). All of the partnership's assets and liabilities were transferred to the corporation in exchange for all of the latter's outstanding stock. Petitioner, C. A. Aboussie, and T. A. Aboussie each received 100,000 shares of stock in the corporation, each block representing one-third of the corporation's total outstanding stock.

On September 1, 1966, T. A. Aboussie sent a letter accepting petitioner's offer to sell his 100,000 shares in the corporation. The pertinent provisions of the letter are as follows:

DEAR MITCHELL ALBERT:

Kay and I [C. A. Aboussie and T. A. Aboussie, respectively] herewith accept your offer to sell your 100,000 shares of Aboussie Brothers Audio-Visual Systems, Inc stock for 75¢ per share totaling $75,000.00

\*     \*     \*     \*     \*     \*     \*

---

[1] All section references are to the Internal Revenue Code of 1954, as in effect in the tax year in issue, unless otherwise noted.

I would like to report that we are in the process of negotiating with the General Telephone and Telegraph and their subsidiary firm, Sylvania, for the sale to them of Aboussie Bro stock in exchange for GT & E stock. * * *

If I succeed in Boston in selling to GT & E for a figure of about 1½ million we will owe 5% commission of the 1st 1 Mil and 20% commission of all over 1 Mil to the Thomas Investment Co. who is responsible for the negotiations. I am asking for 20% of the deal off the top, and you and Kay and me will split over $1.2 Mil. Your share will be about $400,000.00

A formal agreement was entered into between petitioner on one hand and C. A. Aboussie and T. A. Aboussie on the other on October 13, 1966. The agreement was stated to be between petitioner and his brothers as follows:

THIS AGREEMENT MADE AND ENTERED INTO by and between M. A. ABOUSSIE of Wichita Falls, Texas, hereinafter known as PARTY OF THE FIRST PART, and T. A. ABOUSSIE and C. A. ABOUSSIE of Wichita, Kansas, hereinafter known as PARTY OF THE SECOND PART:

WITNESSETH:

M. A. ABOUSSIE is the owner of ONE HUNDRED THOUSAND SHARES of stock of the Aboussie Brothers Audio Visual System, Inc., (hereinafter referred to as ABOUSSIE BROTHERS) stock, which stock said M. A. ABOUSSIE desires to sell, and the said C. A. ABOUSSIE and T. A. ABOUSSIE desire to buy.

The agreement then lists the actions to be performed by the parties as follows:

The said M. A. ABOUSSIE hereby SELLS, CONVEYS AND ASSIGNS to C. A. ABOUSSIE and T. A. ABOUSSIE ONE HUNDRED THOUSAND (100,000) shares of stock in ABOUSSIE BROTHERS for and in consideration of the payment of SEVENTY-FIVE CENTS (75¢) per share, or a total consideration of SEVENTY-FIVE THOUSAND DOLLARS ($75,000.00), payable as follows:

(a) ABOUSSIE BROTHERS will secure the release of M. A. ABOUSSIE, individually, from the City National Bank on all debts, notes and obligations of ABOUSSIE BROTHERS which are held by the City National Bank;

(b) ABOUSSIE BROTHERS will assume two (2) notes due by M. A. ABOUSSIE to the City National Bank, Wichita Falls, Texas, one in the principal sum of TWENTY-FIVE THOUSAND DOLLARS ($25,000.00) and one in the principal sum of NINE THOUSAND FIVE HUNDRED DOLLARS ($9,500.00) and secure the release of the said M. A. ABOUSSIE from all personal liability in regard to said notes;

(c) ABOUSSIE BROTHERS will transfer clear title to one 1965 brown Oldsmobile 98 automobile to M. A. ABOUSSIE, said automobile now being in the possession of M. A. ABOUSSIE;

(d) T. A. ABOUSSIE and C. A. ABOUSSIE will pay to the said M. A. ABOUSSIE THIRTY-EIGHT THOUSAND DOLLARS ($38,000.00) cash in the form of a Cashier's Check upon the transfer and delivery of said 100,000 shares of stock;

(e) Upon the execution of this Agreement, the said M. A. ABOUSSIE will deliver to the City National Bank in Wichita Falls, Texas, said Certificate

representing said 100,000 shares of stock properly endorsed and hereby authorizes said City National Bank to deliver to the said T. A. ABOUSSIE and C. A. ABOUSSIE said Certificate of Stock when the said T. A. ABOUSSIE and C. A. ABOUSSIE have delivered to the said City National Bank a Cashier's Check payable to M. A. ABOUSSIE in the amount of THIRTY-EIGHT THOUSAND DOLLARS ($38,000.00), a Certificate of Title to said 1965 brown Oldsmobile 98 automobile showing a clear title in the said M. A. ABOUSSIE and secured the releases from the City National Bank in Wichita Falls, Texas, of all personal liability of the said M. A. ABOUSSIE on all debts, notes and obligations of ABOUSSIE BROTHERS held by said City National Bank and the release of the said M. A. ABOUSSIE from liability on said two notes of the said M. A. ABOUSSIE totaling THIRTY-FOUR THOUSAND FIVE HUNDRED DOLLARS ($34,500.00) in the principal amounts.

It Is UNDERSTOOD AND AGREED that time is of the essence of this agreement and that the same will be consummated on or before 12:01 P.M. Friday, October 14, 1966.

As required by the agreement, petitioner endorsed and delivered his 100,000 shares of stock in the corporation to the City National Bank in Wichita Falls, Tex.

On January 3, 1967, all of the assets of the corporation were sold to Sylvania Commercial Electronics Corp. (hereinafter called Sylvania). The corporation was then liquidated and the liquidation proceeds were distributed to C. A. Aboussie and T. A. Aboussie.

Petitioner brought suit against T. A. Aboussie and C. A. Aboussie on October 14, 1968, in the U.S. District Court for the Northern District of Texas for breach of contract and violation of the Securities Act of 1934. In that case, the jury entered a verdict for petitioner on the basis that the parties had entered into an oral agreement to divide the proceeds of the sale of the corporation's assets to Sylvania. The District Court entered judgment n/o/v for the defendants (C. A. Aboussie and T. A. Aboussie). Petitioner appealed this decision to the Court of Appeals for the Fifth Circuit. The District Court opinion was reversed and remanded by the Fifth Circuit, cited as *Aboussie* v. *Aboussie*, 441 F. 2d 150 (C.A. 5, 1971), affirmed on rehearing 446 F. 2d 56 (C.A. 5, 1971). In reversing the District Court decision, the Fifth Circuit stated that "It now has been established that in connection with the Buyers' purchase of the Seller's stock there was a tripartite agreement, consisting of the formal written agreement, extrinsic agreements concerning Seller's claims for back salary and expenses, and the extrinsic agreement to divide the profits on the Sylvania sale." It also held that, under Texas law, there was evidence to find that the "Seller's [petitioner] promise to sell his stock was consideration for the promise to divide profits."

In 1965, the partnership purchased assets with useful lives of 8 years or more which were eligible for investment credit under section 38. As a result of such purchases, petitioner claimed an investment credit in

1965 of $1,894.94. Also, at the end of 1965, petitioner had an unused investment credit carryover to the taxable year 1966 in the amount of $8,305.45. In 1966, the partnership purchased assets with useful lives of at least 4 years which were eligible for investment credit under section 38. Petitioner's share of such investment credit for 1966 was $373.94. None of the partnership's assets on which petitioner claimed the investment credit were held by either the partnership or the corporation for more than 4 years prior to October 13, 1966, or January 3, 1967.

OPINION

The issues are (1) whether petitioner retained a substantial interest in the corporation for purposes of determining the applicability of the recapture of investment credit provisions under section 47(a)(1), and (2) alternatively, whether section 1.47-3(f)(5), Income Tax Regs., is invalid because it is unreasonable and arbitrary.

Section 47(a)(1)[2] requires taxpayers to recapture investment credits taken pursuant to section 38 whenever the underlying property is disposed of prior to the end of the useful-life period utilized in determining the amount of investment credit previously allowed or "otherwise ceases to be section 38 property with respect to the taxpayer." Section 47(b)[3] provides an exception to such recapture provisions when property, which was the basis of prior investment credits, is disposed of by a mere change in conducting a trade or business as long as the property is retained in such business and the taxpayer retains a substantial interest in such trade or business.

Petitioner contends that the October 13, 1966, agreement did not result in a sale of his interest in the corporation, but rather that he retained an interest in the corporation until the time of the sale of the assets to Sylvania and liquidation in 1967. If it is determined that

---

[2] SEC. 47. CERTAIN DISPOSITIONS, ETC., OF SECTION 38 PROPERTY.

    (a) GENERAL RULE.—Under regulations prescribed by the Secretary or his delegate—

        (1) EARLY DISPOSITION, ETC.—If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased by an amount equal to the aggregate decrease in the credits allowed under section 38 for all prior taxable years which would have resulted solely from substituting, in determining qualified investment, for such useful life the period beginning with the time such property was placed in service by the taxpayer and ending with the time such property ceased to be section 38 property.

[3] (b) SECTION NOT TO APPLY IN CERTAIN CASES.—Subsection (a) shall not apply to—

        (1) a transfer by reason of death, or

        (2) a transaction to which section 381(a) applies.

For purposes of subsection (a), property shall not be treated as ceasing to be section 38 property with respect to the taxpayer by reason of a mere change in the form of conducting the trade or business so long as the property is retained in such trade or business as section 38 property and the taxpayer retains a substantial interest in such trade or business.

petitioner did not sell his stock in October 1966, and that he retained a substantial interest in the corporation, petitioner will be entitled to deduct the amounts of his unused investment credit carryover and his share of the investment credit arising from assets purchased by the partnership in 1966. Alternatively, petitioner contends that, even if it is found that the October 13, 1966, agreement is a sale of his stock in the corporation, he is not required to make any recapture of investment credit because section 1.47–3(f)(5), Income Tax Regs., is invalid. This position would result in recapture of investment credit by the corporation upon early disposition of the underlying section 38 assets by the sale of the assets to Sylvania.

Respondent contends that petitioner entered into a sale of his stock in the corporation to his brothers in October 1966, thereby terminating his interest in the corporation. As such, petitioner would be required to recapture the investment credit taken in prior years because the underlying properties ceased to be section 38 properties with respect to petitioner. Also, no investment credit would be allowed in 1966 because petitioner had no interest in any section 38 properties at the end of that year.

The crux of petitioner's argument is that the sale agreements were between himself and the corporation, with C. A. Aboussie and T. A. Aboussie acting as agents rather than in their individual capacities. Thus, petitioner contends that the stock was surrendered to the corporation as a convenience in the sale to Sylvania and that such transfer did not represent any diminution of his interest in the corporation. The petitioner further contends that the Fifth Circuit decision of *Aboussie* v. *Aboussie, supra,* held that the sales agreements in question amounted to the petitioner's retention of an interest in the corporation. For the reasons stated below, we are unable to agree with petitioner's contentions.

First, as to petitioner's contention that the agreements were between the corporation and himself, the written agreement dated October 13, 1966 (and quoted above), clearly shows otherwise. The contract was entered into between petitioner and T. A. Aboussie and C. A. Aboussie, each individually named. The corporation was specifically referred to in the agreement, while C. A. Aboussie and T. A. Aboussie were referred to individually. This fact indicates that the parties recognized the distinction between the brothers as agents for the corporation and in their own individual capacities. Paragraph (e) of the written agreement also states that petitioner was required to deliver the stock to the City National Bank for delivery to C. A. Aboussie and T. A. Aboussie upon payment of consideration called for under the contract. The only evidence presented by petitioner to contradict the language of the agreement was his own uncorroborated testimony that the agree-

ment was between himself and the corporation. Furthermore, neither C. A. Aboussie nor T. A. Aboussie was called to testify as to their status under the agreement as individuals or agents for the corporation. Since petitioner has the burden of proof, we can only infer that their testimony would have been unfavorable to petitioner. *Samuel Pollack*, 47 T.C. 92 (1966), affd. 392 F. 2d 409 (C.A. 5, 1968); *Ben Perlmutter*, 44 T.C. 382 (1965), affd. 373 F. 2d 45 (C.A. 10, 1967); *The Wichita Terminal Elevator Co.*, 6 T.C. 1158 (1946), affd. 162 F. 2d 513 (C.A. 10, 1947). Nor does the Fifth Circuit opinion in the *Aboussie* case support petitioner's contention, as that decision talks only in terms of petitioner and his brothers as individual seller and buyers, respectively.

Second, we cannot agree with petitioner's contention that the Fifth Circuit held that the petitioner retained an interest in the corporation by virtue of the oral agreement to divide the profits arising from the sale to Sylvania Corp. Petitioner's interpretation of that decision is much too broad. The Fifth Circuit held that petitioner entered into oral agreements with his brothers, one of which was to divide the profits from the sale of the corporation's assets to Sylvania. Respondent, in his reply brief, conceded that the sales agreement consisted of oral, as well as written, promises by the brothers. Petitioner did not raise, and the Fifth Circuit did not consider, whether the transaction resulted in the retention of an interest in the corporation by petitioner.

As further basis for his contention that he did not sell his stock to his brothers, petitioner states that he would not have sold his stock for only $75,000 at a time when he was aware of the impending sale of the assets to Sylvania. Petitioner's assertion does not disprove the presence of a sale. The facts of this case, as attested by the *Aboussie* decision, show that the petitioner did not sell his stock merely for $75,000, but for the amount plus the additional consideration arising from the oral agreements.

Petitioner has the burden of proving that the deficiency determined by the respondent is incorrect; however, he has failed to produce any evidence that contradicts the written agreement entered into between petitioner and his brothers for sale of his interest in the corporation. Therefore, we hold that petitioner did not retain a substantial interest in Aboussie Bros. Audio Visual Systems, Inc., after October 1966, thereby denying investment credits for taxable year 1966 and triggering the recapture provisions of section 47(a)(1).

In view of our treatment of the transaction as a sale between petitioner and his two brothers, we do not reach the question whether, had the sale of the stock been to the corporation, the exception in sec-

tion 47(b) would be applied. Also, since we held that petitioner's entire interest in the corporation terminated in October 1966, we do not reach the question whether a contract between petitioner and the corporation to share in the profits upon liquidation is a "substantial interest" under section 47(b).

Petitioner alternatively argues that section 1.47-3(f)(5), Income Tax Regs., is invalid for reason of being unreasonable and arbitrary. Petitioner contends that section 47(b) provides an exception from the recapture rules of section 47(a)(1) when there is a mere change of trade or business as long as the property is retained by the transferee in the trade or business and the transferor, only at the time of the transfer, has a substantial interest in such trade or business. Section 1.47-3(f)(5)(ii), Income Tax Regs., states that:

(ii) If in any taxable year the transferor (or in a case where the transferor is a partnership, estate, trust, or electing small business corporation, the partner, beneficiary, or shareholder) of the section 38 property described in subparagraph (1)(i) of this paragraph does not retain a substantial interest in the trade or business directly or indirectly (through ownership in other entities provided that such other entities' bases in such interest are determined in whole or in part by reference to the basis of such interest in the hands of the transferor) then, under paragraph (a) of § 1.47-1, such property ceases to be section 38 property with respect to the transferor and he (or the partner, beneficiary, or shareholder) shall make a recapture determination. For purposes of recomputing qualified investment with respect to property described in this subdivision, its actual useful life shall be the period beginning with the date on which it was placed in service by the transferor and ending with the first date on which the transferor (or the partner, beneficiary, or shareholder) does not retain a substantial interest in the trade or business. Any taxpayer who seeks to establish his interest in a trade or business under the rule of this subdivision shall maintain adequate records to demonstrate his indirect interest in such trade or business after any such transfer or transfers.

The Income Tax Regulations must be sustained unless unreasonable and plainly inconsistent with the revenue statutes to which they relate. *Commissioner* v. *South Texas Lumber Co.*, 333 U.S. 496 (1948). Petitioner's interpretation of section 47(b) would construe the words "so long as" to apply only to the requirement that section 38 property transferred in a mere change of trade or business be retained by the transferee. The requirement that the transferor retain a substantial interest in the new trade or business would not be limited by the phrase "so long as" and would only need be met at the time of the change of business form. Thus, under petitioner's interpretation, when a partnership is converted to the corporate form and the partner retains the same percentage interest, as in the present case, the recapture of investment credit provisions would be applicable only upon disposal of the section 38 property by the transferee corporation. Moreover, petitioner contends that the corporation, rather than the individual shareholders, would be required to take account of any recapture upon

early disposal of section 38 property. Petitioner claims that section 1.47–3(f)(5), Income Tax Regs., is invalid because it requires the shareholder, rather than the corporation, to make recapture of investment credit under section 47(a)(1).

A plain reading of section 47(b) shows that it would be a strained construction to read the phrase "so long as" as applying to the requirement of retention of section 38 properties by the transferee but not to the requirement that the transferor retain a substantial interest in the new trade or business. Any doubt as to this interpretation of section 47(b), however, is cleared up by examination of the pertinent committee reports as follows:

subsection (b) of section 47 provides, in effect, a *suspension* of the application of section 47(a) where there has been a mere change in the form of conducting a trade or business *so long as* (1) the property is retained in such trade or business as section 38 property, *and* (2) the taxpayer retains a substantial interest in such trade or business. On the occurrence of any event which results in a failure to meet *either* of the conditions described above, the property will be deemed to cease to be section 38 property when such event occurs. * * * [Emphasis added.]

\* \* \* \* \* \* \*

The determination of whether the taxpayer has retained a substantial interest in the trade or business is to be made immediately after the change in form of conducting the business, as well as after each time the taxpayer disposes of a portion of his interest in the new enterprise. * * * [S. Rept. No. 1881, 87th Cong., 2d Sess., p. 152 (1962), 1962–3 C.B. 856.]

These excerpts clearly state that the section 47(b) exemption for a mere change of business form suspends the taxpayer's recapture of the investment credit and does not transfer recapture liability to the new business entity. The second paragraph quoted above also states that the taxpayer must maintain a substantial interest in the trade or business even after the transfer. In sharp contrast, petitioner's interpretation of section 47(b) would require that the substantial interest requirement be met only at the time the transfer is made. Such interpretation being contrary to the congressional intent noted above, we cannot accept petitioner's contention that recapture of investment credit liability is transferred to the new trade or business.

The position of the committee reports cited by the petitioner [4] deals with the situation in which there is a transaction to which section 381(a) applies. Since there is no transaction to which section 381(a) applies in this case, it is not pertinent to this decision.

[4] "your committee believed that it was necessary to forego the application of the adjustment rule only in the case of the transfer of property by reason of the death of the taxpayer or in the case of corporations where a successor corporation 'stands in the shoes' of the predecessor corporation. The successor corporation in such a case, of course, must continue to hold the property for the appropriate period of time, or an increase will be made in its tax because of the disposition of the property prior to the end of its estimated useful life. * * * [S. Rept. No. 1881, 87th Cong., 2d Sess., p. 18 (1962), 1962–3 C.B. 724.]"

We hold that the provisions of section 1.47–3(f)(5), Income Tax Regs., are not inconsistent with the intent of Congress and therefore uphold them.[5]

*Decision will be entered under Rule 50.*

---

[5] In *Charbonnet* v. *United States,* 455 F. 2d 1195 (C.A. 5, 1972), the Fifth Circuit, to which appeal in this case lies, upheld the validity of sec. 1.47–4(a)(2), Income Tax Regs., involving the recapture of investment credit by an individual upon his disposal of interest in a subch. S corporation.