Phyllis **RANIER**, Harry H. Ranier, and Juda Ranier, Plaintiffs–Appellants,

v.

**UNITED STATES of America,**
**Defendant–Appellee.**

No. 88–5582.

United States Court of Appeals,
Sixth Circuit.

Argued Feb. 13, 1989.

Decided April 7, 1989.

Tom H. Pierce (argued) Rouse, Rouse, Combs & Pierce, Versailles, Ky., for Phyllis Ranier and Harry H. Ranier.

Tom H. Pierce, Robert L. Swisher, Rouse, Rouse, Combs & Pierce, Versailles, Ky., for Juda Ranier.

Louis DeFalaise, U.S. Atty., Dell Littrell, David Y. Olinger, Jr., Asst. U.S. Atty., Lexington, Ky., Gary D. Gray (argued), Anne B. Durney, Stuart M. Fischbein, Trial Atty., U.S. Dept. of Justice, Tax Div., Washington, D.C., Gary R. Allen, Acting Chief, William S. Rose, Jr., Asst. Atty. Gen., Washington, D.C., for the U.S.

Before GUY and NORRIS, Circuit Judges, and BELL, District Judge.*

RALPH B. GUY, Jr., Circuit Judge.

Plaintiffs appeal from a district court's denial of a claim for refund of taxes paid in 1982, based on alleged errors in plaintiffs' 1977 return. Plaintiffs argue that the district court erred in holding that Internal Revenue Code rules, calling for recapture of investment tax credits, apply to taxpayers in plaintiffs' position. We conclude that the plaintiffs were properly assessed investment credit recapture tax, and affirm.

## I.

Plaintiffs Phyllis and Harry Ranier were the two sole shareholders in the Triple Elkhorn Mining Company. (Juda Ranier, Harry Ranier's wife, is included as a plaintiff because she and Harry filed a joint tax return). In August 1974, the plaintiffs elected to have Triple Elkhorn taxed as a subchapter S corporation. Normally, when a corporation switches from being a taxed corporation to a subchapter S entity, it must pay a recapture tax equal to the amount of tax that would be due if the corporation disposed of *all* section 38 property in its possession at the time of electing subchapter S status. In order to avoid paying this otherwise due recapture tax, the Raniers and Triple Elkhorn entered into a consent agreement pursuant to Treasury Regulation 1.47–4(b)(2). According to this agreement, the plaintiffs and Triple Elkhorn consented to be jointly and severally liable for payment of any investment tax credit recapture tax that might become due as a result of disposition of section 38 property acquired by Triple Elkhorn before August 1974.

The plaintiffs terminated Triple Elkhorn's subchapter S status on August 1, 1977. On August 31, 1977, the Raniers sold all of their Triple Elkhorn stock to a third party. In connection with this sale, the plaintiffs and the buyers of Triple Elkhorn entered into another, separate agreement whereby Triple Elkhorn consented to be liable for all recapture tax that might later be assessed as a result of Triple Elkhorn's disposing of property for which plaintiffs had taken an investment tax credit during 1974–1977. Thus, on their 1977 income tax returns, the only recapture of investment tax credit paid by plaintiffs was that owed as a result of Triple Elkhorn's actual disposition of section 38 property during 1977.

However, the Internal Revenue Service assessed a $95,546.71 recapture tax, which was later reduced to $89,171.71, against Phyllis Ranier and against Harry and Juda Ranier. The government based its increases on Regulation 1.47–4(a)(2) of the Treasury Regulations on Income Tax (26 C.F.R.), according to which a shareholder in a subchapter S corporation who has claimed that corporation's investment tax credits becomes liable for recapture of those tax credits as soon as the shareholder decreases his stock holdings by one-third or more.

In 1982, the plaintiffs paid the increased recapture tax and then filed for refunds. The plaintiffs argued that the 1.47–4(a)(2) rules do not apply to them because they had agreed with the purchasers of the Triple Elkhorn stock to make the corporation liable for any recapture tax that might become due as a result of early disposition

---

* Honorable Robert Holmes Bell, United States District Court, Western District of Michigan, sitting by designation.

of section 38 property. The IRS refused to refund the taxes, and the taxpayers filed separate refund actions in the district court. The district court consolidated the two claims and, faced with no disputed facts and cross motions for summary judgment, granted the government's motions for partial summary judgment. (The government sought partial, rather than complete, summary judgment because portions of plaintiffs' original complaint had already been voluntarily dismissed). The plaintiffs now appeal from the district court's decision in the government's favor.

## II.

According to Internal Revenue Code (IRC or Code) section 38, 26 U.S.C. § 38,[1] a taxpayer is allowed to take an investment tax credit against tax liabilities for part of the cost of investing in qualified depreciable property. This credit is taken in the year in which the property is acquired. Code section 48 describes what property qualifies as "section 38" property. The formula for determining how large the investment tax credit will be depends, in part, upon the property's estimated useful life. IRC § 46(c). Because of this scheme, a problem would arise if the property ended up having a shorter useful life than anticipated, as the taxpayer's received credit, based on an erroneous assumption, will have been too large. To remedy this, IRC section 47 provides that if section 38 property is disposed of or otherwise ceases to be section 38 property before the close of the useful life taken into account in computing the investment tax credit, the taxpayer must pay the difference between the amount of tax credits taken and the amount to which the taxpayer would have been entitled had the actual useful life been used in computing the credits. This is "recapture" of investment tax credits.

Under IRC section 1372, the shareholders of a qualifying corporation may elect to have the corporation treated as a small business corporation (a subchapter S corporation). To be eligible for such treatment, a corporation must have no more than ten shareholders, no shareholders who are not individuals (other than certain qualifying trusts or estates), no non-resident alien shareholders, and no more than one class of stock. 26 U.S.C. § 1371(a). After a corporation becomes a subchapter S corporation, the corporation is no longer subject to taxation. Rather, according to pass-through provisions, each individual shareholder must declare as personal income a pro rata share of the corporation's gross income. Conversely, each individual shareholder is also entitled to a deduction for a pro rata share of any net operating losses. Quite logically, the shareholder is also entitled to apply a share of the corporation's investment tax credit to the shareholder's personal income tax return. *Estate of C.A. Diecks v. Commissioner of Internal Revenue*, 65 T.C. 117 (1975).

As drafted, however, the Code seemed to leave a loophole, permitting shareholders of a subchapter S corporation to avoid the risk of recapture. Although these shareholders are able to claim and use the corporation's investment tax credit, they seemingly could avoid the risk of recapture liability by selling their shares after claiming the investment tax credit but before the close of the estimated useful life. To clarify the Code's operation and to thereby close this loophole, the Commissioner promulgated Treasury Regulation 1.47–4, interpreting IRC section 47(a). According to this regulation, property ceases to be section 38 property for purposes of a shareholder when that shareholder reduces his stock interest in the subchapter S corporation by one-third or more. Treas. Reg. 1.47–4(a)(2). If such a divestiture of stock interest occurs before the close of the property's useful life, Regulation 1.47–4 calls for recapture of the shareholder's credit.

In the instant case, the plaintiffs do not contest that, under the language of Treasury Regulation 1.47–4(a)(2), they would be subject to recapture for all of the credits

---

**1.** Because this case is governed by the tax laws in effect at the time recapture was claimed, 1977, all references are to the Internal Revenue Code of 1954 and to the Code provisions in effect in 1977. Many of these provisions have since been amended.

taken for investment in property during the time in which Triple Elkhorn Mining was a subchapter S corporation (1974–1977). The Raniers disposed of their entire stock interest before the close of the useful life of the corporation's section 38 property. Rather, the plaintiffs argue that this regulation is invalid as applied to them.

The plaintiffs support this argument by first noting what they deem to be the primary purpose behind IRC section 47(a) and Treasury Regulation 1.47–4(a)(2)—the need to guard "against a quick turnover of assets by those seeking multiple credit." *Charbonnet v. United States*, 455 F.2d 1195, 1199 (5th Cir.1972), *citing* S.Rep. No. 1881, 87th Cong., 2d Sess., *reprinted in* 1962 U.S.Code Cong. & Admin.News 3304, 3320. Plaintiffs assert that they are neither trying to acquire a risk-free credit nor attempting to prevent the government from recapturing improperly taken investment tax credits. This argument is supported by the fact that the shareholders entered an agreement with the party purchasing their shares, whereby Triple Elkhorn agreed to pay all recapture liability if property for which a credit was taken were actually sold before the end of its estimated useful life. In this way, plaintiffs argue, they provided the government with a proper party to pursue if the section 38 property is disposed of early, and it is unnecessary to treat the property as non-section 38 property before it is actually disposed of. Additionally, plaintiffs suggest that they are not receiving the benefit of an unearned, risk-free tax credit in this setting, as the price for which they sold the Triple Elkhorn stock was reduced to reflect the potential recapture liability. Plaintiffs argue that advancement of the purposes underlying IRC section 47 does *not* require enforcement of Treasury Regulation 1.47–4(a)(2) in a situation where the shareholder who liquidates stock holdings arranges for the corporation to pay possible recapture liability and where the shareholder "re-pays" the taken investment tax credit by receiving less for the sold shares.

While there is undeniable logic supporting plaintiffs' position, we decline to hold that the rules of Treasury Regulation 1.47–4 are inapplicable to plaintiffs in this particular setting. In both IRC section 38(b) and section 47(a), the Code expressly delegates to the Commissioner the authority to prescribe regulations carrying out the Code's provisions. Treasury Regulation 1.47–4 is thus a legislative regulation, meaning that this court's scope of review is narrowly circumscribed.

> In cases of this sort, "[t]he rule of the judiciary ... begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner." *Bates v. United States*, 581 F.2d 575, 580 (6th Cir.1978), quoting *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967). Our task, therefore, is to determine only whether the regulation is clearly in conflict with the statute's language and purpose. If it is not, we must uphold it, even were we to believe the [plaintiff's] interpretation ... the better. . . .

*Long v. United States*, 652 F.2d 675, 678 (6th Cir.1981). Our sole inquiry is into whether section 1.47–4(a)(2) conflicts with the Code's language and purpose.

Plaintiffs contend that while previous cases have found Regulation 1.47–4 to be a reasonable, valid regulation, *see Long*, 652 F.2d at 681; *Charbonnet*, 455 F.2d at 1199, the regulation does conflict with the Code's purposes when applied to them. We disagree and find the regulation to be a reasonable advancement of the Code's purposes in this case. The Fifth Circuit's decision in *Charbonnet* is instructive in analyzing this issue. In *Charbonnet*, the sole shareholder of a subchapter S corporation transferred thirty-five percent of his shares, thereby triggering the recapture provisions of IRC section 47(a).[2] The tax-

---

**2.** In *Charbonnet,* as here, the corporation ceased to be a subchapter S corporation after the transfer of stock. We agree with the Fifth Circuit's determination that, for the purpose of recapture, it makes no difference whether the corporation *after* the stock sale remains a subchapter S corporation. The issue in either case relates to the recapture of credits taken while

payer argued that the underlying purpose—prevention of bailouts after taking credits—was not advanced where the taxpayer retained a large stake (65%) in the corporation. The court held that, while the asserted goal of preventing quick bailouts and avoidance of recapture liability was undoubtedly an important one, the purpose of Regulation 1.47–4 "is not limited to that one end." *Charbonnet*, 455 F.2d at 1199. Congress also wished to encourage an "overall investment pattern" which included retention of interest in section 38 property for the full period of its useful life. *Id.* Despite the fact that plaintiffs in the instant case attempt to distinguish *Charbonnet* on the basis that the liquidating shareholder there did not enter into an agreement to have another party assume any possible recapture liability, we hold that the valid purposes noted by the *Charbonnet* court also call for rejection of plaintiffs' proposed "exception" in the present case. Accepting plaintiffs' argument would permit a taxpayer to claim an investment tax credit without personally considering whether the section 38 property will be held for its full useful life.

Additionally, another important congressional purpose is advanced by rejecting plaintiffs' proposed exception—that of clarity. As we noted in *Long:*

> The draftsman of regulations is necessarily forced to consider the need for blanket rules which can easily be applied and consulted by taxpayers looking for guidance in planning their affairs. As such, it may indeed be impossible to draft regulations which, when applied, will in every instance actually further the legislative purpose. This is especially so in "this area of limitless factual variations". *United States v. Correll*, 389 U.S. at 307, 88 S.Ct. at 450.

652 F.2d at 681. It was certainly well within the Commissioner's delegated authority to conclude that the benefit of adding an exception for taxpayers in plaintiffs' situation was outweighed by the cost to

clarity. It is beyond our authority to alter such a determination.

Plaintiffs also make a number of equitable arguments, none of which are persuasive enough to affect our decision. Plaintiffs assert that failure to recognize their suggested exception creates an inconsistency within the Code, as shareholders and the corporation *are* permitted to enter an agreement respecting possible recapture obligations at the beginning of a corporation's life as a subchapter S corporation. Although the basic rule is that all property acquired before electing subchapter S status is considered non-section 38 property when the corporation switches to subchapter S status (a necessary rule, since a subchapter S corporation may not be taxed, while the shareholders who did not place the property in service cannot be assessed the recapture tax), Treasury Regulation 1.47–4(b) allows the shareholders and corporation to agree to be jointly and severally liable for any assessed recapture.

We do not think that because an exception was provided in one setting the Code necessarily must make an analogous exception available in other settings. This is especially true where the reasons for granting exceptions in the two settings vary. In enacting Regulation 1.47–4(b), the Commissioner clearly was concerned with the possibility that shareholders might hesitate to use the otherwise appropriate subchapter S rules for fear that the corporation could not withstand the tax burden of recapture. *See Tri–City Dr. Pepper Bottling Co. v. Commissioner of Internal Revenue*, 61 T.C. 508 (1974). Hence, the rule preserves the government's ability to recapture improperly taken credits while removing the disincentive to election of subchapter S status. Here, however, there is no such compelling reason to recognize an exception. In fact, there is good reason not to allow the exception because of the previously discussed preference for having a credit-taker retain possession (either directly or through a subchapter S corpora-

---

the corporation was a subchapter S corporation, regardless of what happens later. *See also Tri-City Dr. Pepper Bottling Co. v. Commissioner of Internal Revenue,* 61 T.C. 508 (1974).

tion) of the section 38 property for its entire useful life.

There is also no "injustice" resulting from this interpretation. Plaintiffs here, unlike the losing plaintiff in *Charbonnet*, are not the victims of an unanticipated, surprising new tax rule, as Treasury Regulation 1.47–4 was in existence well before 1977. In fact, plaintiffs took advantage of Regulation 1.47–4(b) at the time of electing subchapter S status. Also, the government stands in no position to receive a "double recovery," as it is unable to collect the recapture tax from the corporation once it has been assessed against the plaintiffs. The plaintiffs do suffer something of a double loss (decreased stock sale price and recapture liability), while the purchasers of plaintiffs' stock get a windfall (reduced stock price without any accompanying risk of recapture liability), but this is a direct result of plaintiffs' failure to adhere to the express language of Regulation 1.47–4(1)(b) and not of any governmental overreaching.

For the foregoing reasons, the decision of the district court is AFFIRMED.