**Louis M. GIOVANINI, Plaintiff–Appellee,**

v.

**UNITED STATES of America,
Defendant–Appellant.**

Nos. 91–35779, 91–35640.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 6, 1992.

Decided Nov. 4, 1993.

Bruce R. Ellison, Tax Div., U.S. Dept. of Justice, Washington, DC, for defendant-appellant.

Marc K. Sellers, Schwabe, Williamson & Wyatt, Portland, OR, for plaintiff-appellee.

Before: HUG, FLETCHER, and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

The United States Internal Revenue Service ("the Government" or "the Service") appeals the district court's grant of summary judgment in favor of taxpayer in an action for refund of assessed taxes paid by the taxpayer on account of "recaptured" federal investment tax credits. The district court held that taxpayer's investment tax credits were not subject to recapture under Internal Revenue Code ("I.R.C." or "the Code") Section 47(a)[1] because statutory exceptions contained in Section 47(b) applied.[2] The Government argues that the district court erred in failing to apply Treas.Reg. § 1.47–4(a)(2).

The district court had jurisdiction pursuant to 28 U.S.C. § 1346(a)(1). Our jurisdiction rests on 28 U.S.C. § 1291. We review the grant of summary judgment de novo. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). We affirm.

---

1. Since the taxable years involved in this case cover the period from 1980–1982, all references to provisions of the Internal Revenue Code ("the Code" or "I.R.C.") are to the Internal Revenue Code of 1954 (26 U.S.C. 1976 ed. & Supp.1981) unless otherwise specified. Likewise, all references to the Treasury Regulations ("Treas.Reg.") are to the United States Treasury Regulations (26 C.F.R.) in effect from July 1981 through the relevant period of 1982.

2. The court found two exceptions applied to exempt taxpayer from recapture of the tax credit. It held that, in addition to Section 47(b)(2), taxpayer satisfied the conditions for the application of the "change-in-form" (or "flush") exception. On appeal, the government has abandoned the argument which gave rise to the court's alternative position. Because we affirm on the primary Section 47(b)(2) ground for relief, we need not rule on the alternate basis for the district court's holding.

## I. FACTS

Giovanini and eight other individual investors formed a small business corporation, Metro–West, that provided cable television service. The corporation qualified as a Subchapter S corporation[3] for its taxable year ending in 1980 and continued as a Subchapter S corporation through March 31, 1982. In that time period the corporation purchased over $5 million worth of equipment and other depreciable property to expand its cable television network. The investment entitled the corporation to a 10% investment tax credit available under Section 38. This tax credit was computed on the basis of an expected useful life of between three and seven years for the $5 million investment in equipment that qualified as "Section 38 property."

Subchapter S corporations are taxed essentially as partnerships.[4] Shareholders bear any tax liability and may claim applicable tax credits on their individual tax returns. I.R.C. § 48(e) (repealed 1982). Accordingly, a pro rata share of the corporation's investment tax credit flowed through to each of the Metro–West shareholders. Giovanini's share amounted to $27,103, portions of which he claimed in taxable years 1980, 1981, and 1982.

In December 1980, Metro–West and Storer Communications, Inc. incorporated Storer–Metro Communications, Inc. ("Storer–Metro"), an Oregon corporation. Exercising pre-incorporation agreement rights assigned to them by Metro–West, Metro–West shareholders contributed $20,000 in exchange for a 20% collective interest in Storer–Metro.[5] Storer Communications, Inc. contributed $80,000 for an 80% interest. On March 31, 1982, Metro–West merged with Storer–Metro. In what is characterized as a "triangular merger,"[6] the Metro–West shareholders exchanged all of their stock in Metro–West and Storer–Metro for stock of the parent Storer Communications, Inc. Before the merger, Giovanini's interest in Metro–West was 5.279%, and in Storer–Metro, 1.056%. After the merger, his direct and indirect interest in Storer–Metro was 1.068%. The Section 38 property owned by the surviving corporation, Storer–Metro, continued to be used by the corporation. None of it was sold or otherwise disposed of by any party to the merger.

In 1986 the Service determined, pursuant to certain recapture provisions that apply to Section 38 property, specifically Sections 47(a) and 48(e)(2) and Treas.Reg. § 1.47–4(a)(2), that Giovanini owed a deficiency tax based on the recapture of the total amount of his investment tax credit. Giovanini paid $40,582.86 ($27,103 representing the recaptured tax credit, plus interest). In June 1989 he sued for a refund in district court. In the Proposed Pretrial Order, taxpayer and the Government stipulated to uncontroverted facts. The Government specifically conceded that the merger of Metro–West into Storer–Metro was a transaction that qualified under Section 381(a) of the Code.[7]

## II. DISCUSSION

This is a case of first impression. We are required to determine whether a statutory merger of a Subchapter S corporation into a C corporation within the terms of Sections 368(a)(1)(A) and 381(a) triggers recapture of

---

**3.** I.R.C. §§ 1371–1377 (C.C.H.1981). This Subchapter is currently codified at I.R.C. §§ 1361–1379 (Callaghan 1993).

**4.** *See Hudspeth v. C.I.R.,* 914 F.2d 1207, 1211 (9th Cir.1990); James S. Eustice, *Subchapter S Corporations and Partnerships: A Search for the Pass Through Paradigm (Some Preliminary Proposals),* 39 Tax L.Rev. 345 (1984).

**5.** Each shareholder's interest in Storer–Metro was prorated according to his stock interest in Metro–West.

**6.** A triangular merger is a statutory merger of a "target" corporation (the "acquired" corporation) into an acquiring corporation with the acquiring corporation using its parent's stock. *See* 11 Wendi Hangebrauck et al., *Mertens' Law of Federal Income Tax* §§ 43.01, 43.02, 43.35, 43.41 (1990 & Supp.1993) [hereinafter *Mertens' Law of Federal Income Taxation*]; *see also* James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of S Corporations* ¶ 12.05 (2d ed. 1985) (outlining basic requirements for Section 368(a)(1)(A) exempt merger).

**7.** All references to the ER are to the excerpts of record on appeal. References to the CR are to the district court record.

investment tax credits from the Subchapter S shareholders under the recapture provision, Section 47, of the Internal Revenue Code. Specifically at issue is whether the exemption afforded by Section 47(b)(2) applies. Our analysis begins with the Code, "for where, as here, the statute's language is plain, 'the sole function of the courts is to enforce it according to its terms.'" *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)).

> Section 47(a)(1) states that:

> If during any taxable year any property is disposed of, or otherwise ceases to be section 38 property with respect to the taxpayer, before the close of the useful life which was taken into account in computing the credit under section 38, then the tax under this chapter for such taxable year shall be increased....

I.R.C. § 47(a)(1). Section 47(b) exempts "certain cases" from the application of Section 47(a). Taxpayer claims exemption from recapture under Section 47(b)(2), which provides that "Subsection [47](a) shall not apply to ... (2) a transaction to which [S]ection 381(a) applies." Section 381(a) applies "[i]n the case of the acquisition of assets of a corporation by another corporation," if Section 361 applies, and if "the transfer is in connection with a reorganization described in subparagraph (A) ... of [S]ection 368(a)(1)." Section 368(a)(1)(A) defines a qualifying "A" reorganization as "a statutory merger or consolidation."[8] To determine, then, whether Section 47(b)(2) applies, the court must engage in a triple-tiered inquiry. First, does Section 368(a)(1) apply? Second, does Section 381(a) apply? Last, does Section 47(b)(2) apply? Unless the fact the taxpayer is a Subchapter S shareholder brings into play some other limitation, if Sections 368(a)(1) and 361 apply, then Section 381(a) applies; if Section 381(a) applies then Section 47(b)(2) applies. Statutory interpretation proceeds in simple domino fashion, each statutory provision triggering the next.

The Government has stipulated that Section 381(a) applies.[9] Nonetheless, the Government would have us reverse the district court's decision and recapture the tax credit. According to the Government, a more nuanced reading of the Code and its legislative history requires recapture. It argues as follows. A statutory merger, though a single transaction, is the product of two "events," first, an acquisition of assets, and second, an exchange of stock. The acquisition of assets occurs at the "corporate level" and the exchange of stock at the "shareholder level." The fact that the relevant provisions apply to the asset acquisition in which the Subchapter S corporation, Metro–West, participated does not mean that they apply to the exchange of stock by its shareholder. Any analysis of the tax effects on the shareholder of a Section 381 "statutory merger" is entirely separate from those that apply to the corporation. Thus, it can concede that all the relevant provisions mandating an exception to recapture apply *with respect to the corporation,* while maintaining that the shareholder, taxpayer Giovanini, nevertheless remains liable for recaptured investment tax credits. By reading this two-level-two-event theory of statutory mergers into the Code,[10] it avoids

---

8. To qualify as a statutory merger, a transaction must be a merger pursuant to the corporate laws of the United States, a state, a territory, or the District of Columbia. *See* Martin M. Weinstein et al., *Mertens' Law of Federal Income Tax, Code Commentary* § 368(a):3 (1989) [hereinafter *Mertens' Code Commentary*]; *Mertens' Law of Federal Income Taxation, supra* note 6, §§ 43.01, 43.35; Eustice & Kuntz, *supra* note 6, ¶ 12.02[1].

9. It has specifically conceded Section 368(a)(1)(A)'s applicability by describing the transaction as a "statutory merger" in the Pretrial Order. Giovanini submitted the affidavit of another Metro–West shareholder stating that the Service did not challenge his characterization of

the merger as a nontaxable reorganization under Section 368(a)(1)(A) and 368(a)(1)(D). The district court also found Sections 368(a)(1)(A), 368(a)(1)(D), and 381(a) applicable.

10. The Service identifies the district court's error as rooted in a "fail[ure] to recognize that there are two events, each of which can result in recapture of credits claimed by a Subchapter S corporation shareholder, namely, disposition of property by the corporation (a corporate level event) and disposition of his stock interest by the shareholder (a shareholder level event)." Appellant's Opening Brief at 9.

the application of the Section 47(b)(2) exception to subchapter S shareholders.[11]

Like the district court, we are not persuaded. We find nothing in the Code or the policy considerations elaborated in the legislative history that supports the Government's approach. In our view, if Section 47(b)(2) applies, it applies to the transaction as a whole. This is particularly so when the qualified transaction is defined as one accomplished by an exchange of stock. *See* I.R.C. § 361; Or.Rev.Stat. § 57.462 (effective Nov. 1, 1981).[12] Moreover, the distinction between shareholder and corporation is unavailing in this context where whatever tax consequences the Code accords an S corporation participating in a qualified transaction necessarily pass through to its shareholders. *See* I.R.C. § 48(e).

### A. Text

On their face, none of the applicable provisions draw a distinction between corporate and shareholder "events." None provide for different treatment of corporations as opposed to individual shareholders. In short, we find no support for the government's theory in the plain language of the Code. Nor, ultimately, are we persuaded by its alternative reading of the text.

The Government's textual argument begins with Section 47(a). It presses an interpretation of this provision, and those related to it, that would modify the plain meaning of both the general rule (§ 47(a)) and its exceptions (§ 47(b)). According to the Service, Section 47(a)'s[13] language can be parsed to "provide[ ] for recapture in two situations": one where "'property is disposed of'"; the other where property "'*otherwise* ceases to be [S]ection 38 property with respect to the taxpayer.' (Emphasis added.)" Appellant's Opening Brief at 26 (citing I.R.C. § 47(a)(1)). In its view, while transactions falling within the first clause of Section 47(a)(1) (where "property is disposed of") may be exempted by virtue of qualifying as Section 381(a) mergers, Treas.Reg. § 1.47–4(a)(2)[14] continues to govern transactions falling within the second clause (where property "ceases to be [S]ection 38 property"). Because, for reasons discussed below, an exchange of shares is not a Section 381(a) "event," the Service contends it falls under the second clause of Section 47(a)(1). Thus "property ceases to be Section 38 property with respect to a Subchapter S corporation shareholder where, as here, his proportionate stock interest in the corporation is reduced by a third or more." Appellant's Opening Brief at 28.

The Service also urges a complementary interpretation of Section 381(a).[15] It reads the general language, "[i]n the case of the acquisition of assets of a corporation by an-

---

**11.** Taxpayer objects to the Government's argument on appeal as improperly before the court because it was not raised below. The Government asserts that it simply "presents a more fully developed analysis of the plain language of the relevant statutes" and that its failure to "use those precise terms" does not signify that the theory itself is new. Appellant's Reply Brief at 2. Although the Government abandoned its primary argument below, it correctly points out that it argued its bifurcation theory in its Memorandum in Support of the Government's Motion for Summary Judgment.

**12.** All citations to the Or.Rev.Stat. are to the law in effect in 1981, unless otherwise indicated.

**13.** *See supra* at 785.

**14.** This regulation is promulgated pursuant to the express authority of Sections 38(b) and 47(a) and provides that a shareholder is required to surrender through a recapture determination a portion of the investment tax credit he received if

the "shareholder's proportionate stock interest in [the] corporation is reduced (for example, by a sale or redemption of his stock, or by the issuance of additional shares)" by more than one-third before the close of the property's estimated useful life. Treas.Reg. § 1.47–4(a)(2)(i)–(ii).

**15.** Section 381(a) states:

> (a) General Rule. In the case of the acquisition of assets of a corporation by another corporation ...
> (2) in a transfer to which [S]ection 361 (relating to nonrecognition of gain or loss to a corporation) applies, but only if the transfer is in connection with a reorganization described in subparagraph (A), (C), (D), (F), or (G) of [S]ection 368(a)(1),
> the acquiring corporation shall succeed to and take into account, as of the close of the day of distribution or transfer, the items described in subsection (c) of the distributor or transferor corporation, subject to the conditions and limitations specified in subsections (b) and (c).
> I.R.C. § 381(a).

other corporation," to limit the application of this Section to "corporations" and "corporate level events." Thus it deems Section 381(a) applicable to the "corporate" transaction or disposal of property, but not to the "shareholder" exchange of stock, which it characterizes as falling within the second clause of Section 47(a)(1). This exchange, it insists, is not part of the Section 381(a) transaction (and, consequently, not exempted under Section 47(b)), and so remains governed by Section 47(a) and its implementing regulations. It concludes that, by its own terms, Section 381(a) applies only to the "corporate" dimension of the statutory merger and that the exemption applies only at the "corporate level." With respect to a Subchapter S shareholder, then, whatever exemption from recapture the corporation is entitled to, under the Service's theory, would not redound to the benefit of the individual shareholders.

We disagree. Neither the text of the Code nor its tax treatment of S corporations supports the Government's argument. With respect to the textual reading, nothing in the language of Section 47(a)(1) or 47(b)(2) suggests that there should be a separate analysis for shareholders as opposed to corporations. There is no discussion of different triggering "events" for different "levels." In the first place, the particular reorganization in question here, a statutory merger, necessarily involved both the acquisition of corporate assets and the exchange of stockholders' shares. In compliance with Section 361, the reorganization consisted "solely [of an exchange] for stock." See Or.Rev.Stat. § 57.-462 (stock-for-stock exchange) (effective Nov. 1, 1981). Indeed, without the exchange of shares, the transaction would not have quali-

fied under Sections 361(a) and 368(a)(1)(A). Notwithstanding any analytical distinctions one could impose, these "events" (the corporate acquisition of assets and the shareholder exchange of stock) function as the necessary components of a qualified statutory merger.[16]

Section 381's introductory language makes clear that a corporate transfer of assets from one corporation to another must be involved, and thereby precludes its application to partnerships or other noncorporate business forms.[17] Beyond this prerequisite, Section 381(a)(2) is cast in intentionally broad terms. It provides for transactions "in connection with a reorganization."[18] On its face the section does not imply, let alone require, that a distinction be drawn between corporate shareholders and the corporation. As we have pointed out, in light of the very nature of the mergers at issue, it would make no sense for it to do so. To exempt, piecemeal, a merger the Code specifically defines as necessarily both a "corporate" and a "shareholder" transaction would be to ignore the Code's stated definitions. Certainly, Section 381(a), in incorporating Sections 361(a) and 368(a)(1)(A), lends no authority to this position.

Not only is the Government's textual interpretation internally inconsistent, it is at odds with the Code's tax treatment of S corporations. In attempting to erect distinctions between S corporations and S corporation shareholders for the purposes of exemption from recapture, the Service disregards the pass-through nature of S corporation taxation. The tax liabilities and benefits of an S corporation qualifying for investment tax credits pass through to its shareholders. See

---

16. The Government does not relate its two-event-two-level theory to Section 368(a)(1)(A), or the relevant state law on which it depends. Nor would these provisions offer it support. Oregon law places no emphasis on the separate events or transactions the Government ascribes to statutory mergers. See Or.Rev.Stat. §§ 57.455 ("Procedure for Merger"), 57.462 ("Procedure for Exchange") (effective Nov. 1, 1981), 57.480 ("Effect of Merger or Consolidation") (effective Nov. 1, 1981).

17. Cf. Eustice, supra note 4, at 354 & n. 71, 391–92, 410–11 (interpreting Section 368 as inapplicable to noncorporate business forms).

18. The Government ignores this purposefully broad language in criticizing the district court for failing to construe Section 381 more narrowly. It seizes language that the court used to discuss Section 381, not the text itself, to insist that the Code defines "parties to a reorganization" in narrow terms. Appellant's Opening Brief at 29 n. 15. The criticism is particularly misplaced in light of the broad "in connection with" language of the text.

I.R.C. § 48(e); Treas.Reg. § 1.48–5(a)(1).[19] Subchapter S corporations may participate in mergers as described by Section 381(a). When they do, they are exempted from recapture tax liability. Because shareholders bear the tax liability of the corporation, if the corporation is not liable, they are not liable. Contrary to the Government's conclusion, *supra*, whatever exemption from recapture the S corporation is entitled to *necessarily* redounds to the benefit of the individual shareholders.

Once having conceded that the merger of Metro–West into Storer–Metro was a "statutory merger" within the terms of Section 381(a), the Government simply has no textual basis for according the Section 47(b)(2) exemption to the corporate entity but not allowing it to pass through to its shareholders—a scheme that would be wholly at odds with the tax treatment of S corporations.[20] Like the district court, we conclude that the merger is a transaction that exempts the tax credit from recapture under Section 47(b)(2). We, therefore, affirm the court's determination that Section 47(a) and Treas.Reg. § 1.47–4 are inapplicable.[21]

### B. Legislative History and Policy Considerations

The Service's extratextual arguments do not counsel a different result. The Government would have us deny the benefits of Section 47(b)(2) exemption to shareholders on the basis of Section 47(a)'s legislative history and policy considerations specific to Subchapter S corporations. We conclude that these sources neither require nor sanction abandoning the textual analysis employed by the district court.

The Government parses *Charbonnet v. United States*, 455 F.2d 1195 (5th Cir.1972), and *Ranier v. United States*, 871 F.2d 607 (6th Cir.1989), to explicate the purpose and legislative history of Section 47(a). Significantly, in neither case are the Section 47(b) exceptions to the recapture provision properly at issue. In *Charbonnet*, the taxpayer, previously the sole shareholder of a Subchapter S corporation which had declared a stock split, and who, after the stock split, retained less than a two-thirds percentage ownership in the surviving corporation, contested the validity of Treas.Reg. § 1.47–4(a)(2), claiming that it was inconsistent with the "change-in-form" exception which he alleged applied. That court held that because "the exception ha[d] no applicability," Treas.Reg. § 1.47–4(a)(2) would govern. *Charbonnet*, 455 F.2d at 1201. It did not hold that because Treas. Reg. § 1.47–4(a)(2) applied, exception 47(b)(2) did not. Nor did it suggest that even if exception 47(b)(2) applied, it did not override the regulation. Both these arguments are made by the Government in this case, but they derive no authority from that court's explication of recapture policy in a

---

**19.** The pass-through nature of S corporation tax treatment is currently codified at I.R.C. § 1366. *See Mertens' Code Commentary* §§ 48(e):1, 1366:1, 1368:1, 1371:1. For a detailed and scholarly account of this model of taxation, see Eustice, *supra* note 4, passim; *see also* Eustice & Kuntz, *supra* note 6, ¶ 8.04[2][b][ii], at 8–15.

**20.** The Service also proposes a structural argument in support of this differentiated treatment. It argues that Section 361 (regarding the non-recognition of gain or loss for corporations) and Section 354 (regarding the non-recognition of gain or loss for shareholders) distinguish between corporations and shareholders and treat each differently. Taxpayer correctly points out that distinctions between Sections 361 and 354 expressly drawn by the Code have no bearing on whether a similar distinction should be drawn between the corporation and its shareholders for the purposes of Sections 381(a) and 47(b)(2) which, in themselves, reveal no such distinctions and suggest no differentiated treatment.

**21.** Both parties agree that if Storer–Metro did dispose of the Section 38 property it acquired from the merger before the end of its useful life, the Government would be entitled to recapture the investment tax credit under Section 47(a) and its regulations. They disagree as to whether recapture would be assessed against the acquiring corporation (as provided for in Treas.Reg. § 1.47–3(e)(1)) or the shareholders of the acquired corporation (as suggested in James S. Eustice & Joel D. Kuntz, *Federal Income Taxation of Subchapter S Corporations* ¶ 8.5[4][b] n. 129 (1982). *But see* Eustice & Kuntz, *supra* note 6, ¶ 12.02[5]). We need not resolve this dispute. For our purposes, it is sufficient to note that the Section 38 property continues to be put to use and that, should it be disposed of prematurely, the Service is fully empowered to recapture the investment tax credit.

case where no exception was found to apply. In *Ranier*, taxpayers sold all their stock to a third party and entered into an agreement that any recapture liability would be shouldered by the acquiring third party. They argued that, as a consequence of this agreement, the regulation was invalid as applied to them. The *Ranier* court upheld the validity of the regulation without engaging in any analysis of Section 47(b). No statutory exception was at issue.

Even if these cases were on point, they suggest no reason to withhold tax benefits from S corporation shareholders. Extending Section 47(b)(2) protection to a shareholder who, as in this case, can prove his entitlement to it is not at odds with the policies that underlie investment tax credit recapture.

In passing Section 47(a), Congress was concerned with preventing multiple credits by quick turnover of assets,[22] that would allow a taxpayer "[to bail] out early, [so that he] reaps a tax benefit without himself suffering the risk throughout the estimated useful life," [23] and with the shifting of property "from a business to a personal use," or to a use "predominantly outside the United States." [24] It wanted to encourage an "overall investment pattern" that would "fully satisfy the ends of the investment credit." [25] Taxpayer has not engaged in any scheme to afford "multiple credits." He has not "bailed out" or extinguished his risk; he continues to participate as a shareholder (and risk-taker) in a larger cable television company which still puts the $5 million investment to use.[26] It appears that his "overall investment pattern" is to remain a participant in a presumably even more productive, larger cable television company that now holds the $5 million Section 38 property.[27] The Government's contention that taxpayer loses the tax credit because he has "bailed out" or abandoned his risk by diversifying and spreading that risk impermissibly stretches legislative history and the case law interpreting it. Essentially the Government reads Treas.Reg. § 1.47–4(a)(2) into language that bears no trace of its percentage-based analysis.[28] In our view a regulation promulgated pursuant to Section 47(a)'s general recapture rule cannot, in the guise of underlying policy, purpose, or legislative history, negate the effect of a separate statutory provision expressly departing from that general rule.[29]

---

22. *Ranier*, 871 F.2d at 610; *Charbonnet*, 455 F.2d at 1197; *see also* S.Rep. No. 1881, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3304, 3321.

23. *Charbonnet*, 455 F.2d at 1198. This concern is restated in *Ranier* as the problem of shareholders being "able to claim and use the corporation's investment tax credit," and nevertheless, "avoid the risk of recapture liability by selling their shares after claiming the investment tax credit but before the close of the estimated useful life." *Ranier*, 871 F.2d at 609.

24. *Charbonnet*, 455 F.2d at 1198, 1199.

25. *Ranier*, 871 F.2d at 611; *Charbonnet*, 455 F.2d at 1199.

26. Without selling or abandoning the Section 38 property for which shareholder received an investment credit, taxpayer Giovanini's proportionate interest in it and other property (perhaps even other Section 38 property) fell by some 80%. This is the logical consequence of the merger of a small corporation into a larger one; it could be avoided only by the shareholder purchasing sufficient shares in the surviving corporation to maintain in it the same, or at least not less than two-thirds of the interest he enjoyed as a shareholder in the smaller corporation. To require substantial new investment in order to escape a determination that the shareholder of an acquired corporation has "bailed out" would discourage such mergers. Ironically, expansion of the productive use of Section 38 property would trigger recapture of the investment tax credit without regard to the actual disposition of the property.

27. This is not a case like the one hypothesized in *Charbonnet* where the court viewed the recapture provisions as preventing "taxpayers from receiving windfall benefits when, although, they have lent their support previously, they themselves no longer contribute to the purpose of the investment credit." *Charbonnet*, 455 F.2d at 1201. *See supra* note 21.

28. The Government relates that "[t]axpayer has bailed out of his investment in Metro–West property with respect to which he claimed the credits (or more precisely, he has bailed out of 80 percent of his investment in that property)". Appellant's Opening Brief at 34. Significantly, this "precise" formulation is derived from a regulation that is inapplicable. Treas.Reg. § 1.47–4(a)(2).

29. In arguing that Section 47(b)(2) could apply without overriding the application of Section 47(a) and its implementing regulations, the Ser-

Finally, the Service resorts to a mixed legislative history and policy argument to

vice relies on Eustice & Kuntz, *supra* note 6. The authors note that:

> Section 47(b)(2) will prevent the transfer of property in the merger from constituting a recapture event.
>
> Nevertheless, each shareholder of the acquired S corporation may incur recapture if there is a proportionate decline in that shareholder's stock ownership. The recapture mechanism ... based on the percentage of stock ownership[ ] applies to the shareholders of an acquired S corporation.

¶ 12.02[5] at 12–12 to 12–13. This suggestion is made solely on the basis of Treas.Reg. § 1–47(4)(a)(2). The authors cite another commentator ·who, "despite [the] statutory language" of Section 47(b)(2), questions its applicability to the acquisition of an S corporation. *See id.* ¶ 12.-02[5] n. 56 at 12–13 (citing P.J. Di Quinzio, *Refinancing and/or Sales or Acquisitions of Subchapter S Corporations*, 28 N.Y.U.Inst. on Fed. Tax'n 269, 293 n. 60 (1970)); *see also Mertens' Law of Federal Income Taxation, supra* note 6, §§ 41B.211, 41B.212, 43.137 & n. 85.

We note that at one time the question whether S corporations could participate in Section 381 reorganizations was unsettled. Irving M. Grant & William R. Christian, *Subchapter S Taxation* § 29.02 (3d ed. 1990 & Supp.1992). In this context, the availability of Section 47(b)(2) exemption for S corporations would be equally uncertain. However, it is now generally accepted that Section 381 applies to S corporation reorganizations. *Id.; Mertens' Law of Federal Income Taxation, supra* note 6, § 41B.275–77. Indeed, several commentators point to the S corporation's capacity to participate in tax free reorganizations as one of the most "valuable attributes" of the business form. *See Mertens' Law of Federal Income Taxation, supra* note 6, § 41B.209; Warren Paul Kean, Comment, *After the Facelift, is Subchapter S Any More Attractive?*, 46 La.L.Rev. 87, 92 (1985). Among these are Eustice and Kuntz. *See* Eustice ·& Kuntz, *supra* note 6, ¶ 12.01, at 12–3 ("normal corporate rules generally apply to S corporations"); *id.* at 12–4 ("one of the principal advantages of an S corporation over a partnership is the corporation's ability to take part in a tax-free corporate reorganization"); *id.* ¶ 12.02[1], at 12–5 ("[b]ecause an S corporation is the same type of entity as a nonelecting corporation under local law, satisfying the basic definition of a Type A reorganization involves no special considerations"); *id.* n. 17 at 12–6 (noting that the Service has held Section 368(a)(1)(A) to apply to a merger involving an S corporation in Ltr.Rul. 8417042 (Jan. 24, 1984)); *see also* Eustice, *supra* note 4, at 354 n. 71 ("[s]ince [S]ubchapter S says nothing about reorganizations involving S corporations, the provisions of [S]ubchapter C, including § 368(a)(1), govern these regulations"); *id.* at 411 ("S corporations can engage in certain types of reorganizations, either with other S corporations or with C corporations"). Once it is ac-

cepted that Section 381 applies, and that the associated tax benefits pass through to S corporation shareholders, any suggestion that Section 47(b)(2) might not apply *a fortiori* to S corporation shareholders is difficult to credit.

The missing conceptual link perhaps ʼmay be traced to the Government's argument in the district court that the "flush" language following Section 47(b)(3) did not constitute a separate self-contained "change-in-form" exception, but rather modified the enumerated exceptions. Thus, for Section 47(b)(2) to apply, a taxpayer would have to comply with the requirements of both provisions and related regulations. An inquiry into the proportionate interest of shares retained by the shareholder would become relevant under Treas.Reg. § 1.47–3(f). The record discloses that the IRS agent who first determined Giovanini owed a recapture deficiency relied upon Rev.Rul. 77–631, 1977-__ C.B. __, and *James Soares*, 50 T.C. 909, 1968 WL 1556 (1968), two sources which do in fact interpret the regulation implementing the "change-in-form" exception, Treas.Reg. § 1.47–3(f). (CR 1, Exhibit A at 6–7). We have noted that the Service affirmatively abandoned this line of argument on appeal, *supra* note 11. In any event we read the provisions as independent. In our view the Service's prior argument proved *too much*. It makes no sense, for example, to view Section 47(b)(1) as modified by the change-in-form exception. An inheritance hardly represents a "mere change in the form of conducting the trade or business." The deceased shareholder does not retain a substantial interest in it, nor necessarily does any one successor. *See e.g.*, Eustice & Kuntz, *supra* note 6, ¶ 8.04[4][c] & n. 196 at 8–34; *Mertens' Code Commentary, supra* note 8, § 47:9 (no such additional requirement for exemption under Section 47(b)(1)).

The position we take here is anchored in the text. It is supported by other commentators also directly focussed on the interplay of the relevant textual provisions. Grant and Christian, having correctly observed that "[t]here appears to be no authority directly on point on the question of whether there would be recapture of investment tax credit if a shareholder of an S corporation disposed of stock in an 'A' ... reorganization," suggest that the application of interrelated provisions should result in exemption: "[a] good argument can be made that there would be no recapture in such circumstances. Section 47(b)(2) provides that the recapture provisions do not apply to a reorganization to which [Section] 381(a) applies. Section 381(a) applies to 'A' reorganizations...." Grant & Christian, *supra*, § 28.04. Unlike Di Quinzio, *supra*, we are bound by the "statutory language." *Cf.* Eustice & Kuntz, *supra* note 6, ¶ 12.02[5] n. 56 at 12–13. We discern no Congressional intent either to simultaneously apply Section 47(b)(2) and Treas. Reg. §§ 1.47–3(f), 1.47–4(a)(2), or to displace Section 47(b)(2) as inapplicable on the basis of one or both of these regulations.

single out S corporations for unfavorable tax treatment under Section 47(b)(2). Ignoring its own concession that the transaction in which the S corporation participated did fall within the literal terms of the statutory exemption, it posits that, as a matter of legislative history, this exception may only apply "in the case of corporations where a successor corporation 'stands in the shoes' of the predecessor." Appellant's Opening Brief at 35–36 (parentheticals omitted).[30] The Service then contends that a "successor corporation does not 'stand in the shoes' of a predecessor Subchapter S corporation with respect to investment credits, because a Subchapter S corporation has no investment tax credit 'shoes.'" *Id.* The argument draws on the particular nature of a Subchapter S corporation as a flow-through entity in which tax attributes inhere in the shareholder, not the corporation. *See* I.R.C. § 48(e)(1). While it is true that the district court erroneously relied on Section 381(c)(12) to confirm that "tax benefits" would carry over to the C corporation from the S corporation,[31] other provisions of the Code and the regulations do address the carryover effects of a statutory merger so long as that merger is one to which Section 381(a) applies. I.R.C. § 381(c)(23) (C.C.H.1981);[32] Treas.Reg. § 1.47–3(e), 1.47–1 (C.C.H.1981).[33] *See also* Eustice & Kuntz, *supra* note 6, ¶ 12.02[6].

Ultimately, the Government's argument that Subchapter S corporations are different from other business organizations is very narrowly cast. It does not contest that a Subchapter S corporation may participate in a statutory merger within the meaning of Section 381(a) in every way besides the carryover of tax benefits for Section 38 credits. The district court found "no material distinction between subchapter S corporations or other business entities anywhere in [S]ection 381 or 47." It declined to "read such distinctions into the statutes and assume[d] that Congress intended for shareholders of [S]ubchapter S corporations to receive the same treatment as other business entities." District court opinion at 11.

Notably, in October 1982, as part of the Subchapter S Revision Act, Congress enacted a coordinating provision for Subchapters S and C corporations. It makes clear that "[e]xcept *as otherwise provided,* and except *to the extent inconsistent* with this subchapter [Subchapter S], [S]ubchapter C shall apply to an S corporation *and its shareholders.*" Prentice–Hall, Inc., *Handbook on Subchapter S Revision Act of 1982,* ¶ 295 & n. 295 (1982); I.R.C. § 1371(a)(1) (Callaghan 1993) (effective Dec. 31, 1982). Even in the absence of this coordinating provision, we

---

**30.** *See* S.Rep. No. 1881, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3304, 3321 (1962).

**31.** The Government correctly points out that the district court improperly relied on the later Section 381(c)(12), as amended in 1986 and effective for tax years after 1983. (ER at 23.) 26 U.S.C. § 381(c)(12) (1988). Section 381(c)(12) in effect for the period relevant to this case does not include "tax benefits" as a carryover item. I.R.C. § 381(c)(12) (C.C.H.1981).

**32.** This section specifically addresses the carryover of Section 38 credit:

The acquiring corporation shall take into account (to the extent proper to carry out the purposes of this [S]ection and [S]ection 38, and under such regulations as may be prescribed by the Secretary) the items required to be taken into account for the purposes of [S]ection 38 in respect of the distributor or transferor corporation.

I.R.C. § 381(c)(23).

**33.** Section 1.47–3(e) provides:

[n]otwithstanding the provisions of § 1.47–2 relating to "disposition" and "cessation," paragraph (a) of § 1.47–1 shall not apply to a disposition of [S]ection 38 property in a transaction to which [S]ection 381(a) (relating to carryovers in certain corporate acquisitions) applies. If the [S]ection 38 property described in the preceding sentence is disposed of, or otherwise ceases to be [S]ection 38 property with respect to the acquiring corporation, before the close of the estimated useful life which was taken into account in computing the transferor corporation's qualified investment, then paragraph (a) of § 1.47–1 shall apply to the acquiring corporation with respect to such [S]ection 38 property....

Treas.Reg. § 1.47–3(e) (C.C.H.1981).

Section 1.47–1 states:

[t]here shall also be recomputed under the principles of §§ 1.46–1 and 1.46–2 the credit allowed for the credit year and for any other taxable year affected by reason of the reduction in credit earned for the credit year, giving effect to such reduction in the computation of carryovers or carryback of unused credit.

Treas.Reg. § 1.47–1(a)(1) (C.C.H.1981).

agree with taxpayer's argument that its sense is implicit in the failure of Section 47(b)(2) or any provision in Subchapter S to exempt Subchapter S shareholders from such coverage.[34] In light of our analysis of the text, we decline to adopt the Government's reading of the legislative history of Section 47 to create a distinction in the Code with respect to the treatment of Subchapters S and C corporations under Section 47(b)(2).

## III. CONCLUSION

Because the transaction at issue is a "statutory merger" within the terms of Section 381(a), and because Section 47(b)(2) encompasses transactions to which Section 381(a) applies, we find that the plain language of the Code supports exempting taxpayer from recapture of the investment tax credit claimed on his returns in tax years prior to the merger. We conclude that no legislative history or policy considerations militate against this holding. We reject the Service's position that, in respect to Subchapter S corporations, only the corporate entity, and not its shareholders, may benefit from the Section 47(b)(2) exemption. It is fundamentally at odds with the pass-through tax treatment of S corporations. Like the district court, we discern no intent on the part of Congress to disadvantage S corporations and their shareholders in this way.

**AFFIRMED.**

---

**34.** Congress first provided for investment tax credits in the Revenue Act of 1962. It legislated against a backdrop which included Subchapter S (enacted in 1958) and specifically took S corporations into account by providing pass-through tax treatment of qualified investments. *See*

---

I.R.C. § 48(e), added by Section 2(b), Pub.L. No. 87–834 (1962) (repealed 1982); *Mertens' Code Commentary, supra* note 8, § 48(e):1; *see also* Eustice & Kuntz, *supra* note 6, ¶ 1.02[1]–[3] (detailing history of enactment).