Alfred O. and Margaret A. BATES et al., Appellants,

v.

The UNITED STATES of America, Appellee.

Nos. 76–2073–78.

United States Court of Appeals, Sixth Circuit.

Argued April 20, 1978.

Decided July 21, 1978.

Robert E. Glaser, Hugh M. Stanley, Jr., Arter & Hadden, Cleveland, Ohio, for appellants.

Frederick M. Coleman, U.S. Atty., Cleveland, Ohio, Scott P. Crampton, Asst. Atty. Gen., Gilbert Andrews, Tax Division, U.S. Dept. of Justice, Washington, D.C., Myron C. Baum, Michael L. Paup, Robert T. Duffy, Washington, D.C., for appellee.

Before CELEBREZZE, LIVELY and KEITH, Circuit Judges.

LIVELY, Circuit Judge.

This case concerns the requirements which must be met for a taxpayer to be entitled to the favorable tax treatment extended by Section 1244 of the Internal Revenue Code of 1954, 26 U.S.C. § 1244 (1970).[1]

Ordinarily when an investment in a corporation becomes worthless, the investor's loss is treated as a capital loss, the deductibility of which is limited by § 1211 of the Code. When a loss is suffered on stock which qualifies under § 1244, however, the investor may treat it as an ordinary loss, which is deductible from other taxable income. This is a significant advantage. For stock to qualify under § 1244 the issuing corporation must satisfy the statutory conditions.

The taxpayers all suffered losses on their stock in a family-owned small business cor-

1. Portions of § 1244 involved in this appeal are as follows:

§ 1244. **Losses on small business stock**

(a) General rule.—In the case of an individual, a loss on section 1244 stock issued to such individual or to a partnership which would (but for this section) be treated as a loss from the sale or exchange of a capital asset shall, to the extent provided in this section, be treated as a loss from the sale or exchange of an asset which is not a capital asset.

(b) Maximum amount for any taxable year.—For any taxable year the aggregate amount treated by the taxpayer by reason of this section as a loss from the sale or exchange of an asset which is not a capital asset shall not exceed—

(1) $25,000, or

(2) $50,000, in the case of a husband and wife filing a joint return for such year under section 6013.

(c) **Section 1244 stock defined.**—

(1) In general.—For purposes of this section, the term "section 1244 stock" means common stock in a domestic corporation if—

(A) such corporation adopted a plan after June 30, 1958, to offer such stock for a period (ending not later than two years after the date such plan was adopted) specified in the plan,

(B) at the time such plan was adopted, such corporation was a small business corporation,

(C) at the time such plan was adopted, no portion of a prior offering was outstanding,

(D) such stock was issued by such corporation, pursuant to such plan, for money or other property (other than stock and securities), and

(E) such corporation, during the period of its 5 most recent taxable years ending before the date the loss on such stock is sustained (or if such corporation has not been in existence for 5 taxable years ending before such date, during the period of its taxable years ending before such date, or if such corporation has not been in existence for one taxable year ending before such date, during the period such corporation has been in existence before such date), derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stock or securities (gross receipts from such sales or exchanges being taken into account for purposes of this subparagraph only to the extent of gains therefrom); except that this subparagraph shall not apply with respect to any corporation if, for the period referred to, the amount of the deductions allowed by this chapter (other than by sections 172, 242, 243, 244, and 245) exceed the amount of gross income.

Such term does not include stock if issued (pursuant to the plan referred to in subparagraph (A)) after a subsequent offering of stock has been made by the corporation.

\* \* \* \* \* \*

(e) Regulations.—The Secretary or his delegate shall prescribe such regulations as may be necessary to carry out the purposes of this section. Added Pub.L. 85–866, Title II, § 202(b), Sept. 2, 1958, 72 Stat. 1676.

poration which was liquidated in 1971. Each claimed an ordinary loss pursuant to § 1244 rather than loss from the sale of a capital asset. The Commissioner of Internal Revenue disallowed the § 1244 claims and assessed deficiencies. Each taxpayer paid the deficiencies, and after claims for refund were denied, brought separate actions for refunds which were consolidated in the district court.

The facts were stipulated. Though the district court heard testimony the trial did not produce conflicts in the evidence and the findings of fact of the district court are not in dispute. Alfred Bates, his son and other members of the Bates family formed Bates Investment Corporation (BIC) in 1969. The stock in BIC was offered pursuant to a plan which met the requirements of § 1244. It was stipulated that there were valid business reasons for the formation of BIC. The purpose of forming BIC was to provide a means of re-entry into the machine tool business in which both father and son had experience. This was accomplished through the purchase by BIC of a majority of the outstanding stock of National Cleveland Corporation (National Cleveland), a publicly owned corporation engaged in manufacturing metal cutting tools. This purchase consumed practically all of the funds of BIC, which had been realized primarily from the sale of stock to members of the Bates family and the issuance of convertible debentures.

After the purchase both Alfred Bates and his son Arthur worked for National Cleveland, Arthur was employed as the salaried chairman of National Cleveland, and Alfred spent many uncompensated hours performing services for that corporation. There

was no agreement that National Cleveland would pay BIC for these services. BIC never billed National Cleveland for the services of either taxpayer and no payments were made by National Cleveland to BIC.

During the existence of BIC Alfred and Arthur Bates also performed services for BIC and actively searched for other businesses which BIC might acquire. However, the only asset ever owned by BIC was the National Cleveland stock. BIC had no gross receipts during any year of its existence and it had income tax deductions in each year. National Cleveland went into bankruptcy at about the same time that BIC was liquidated.

While the government conceded that the five requirements of § 1244(c)(1)(A) through (E) of the Code were met, it contended that the taxpayers were not entitled to section 1244 ordinary loss treatment for the following reason:

> [E]ven though Bates Investment Corporation may have technically met all the requirements enumerated in Section 1244 itself, it was not an operating company within the meaning of the legislative regulations promulgated by the Secretary of the Treasury Department and was therefore not a corporation which qualified as a small business corporation. District Court opinion, App. p. 145.

The "legislative regulation[s]" referred to is Treas.Reg. § 1.1244(c)–1. Specifically, the government contends that BIC was not "largely an operating company," a condition for ordinary loss treatment contained in § 1.1244(c)–1(g)(2) of the regulation.[2] This

2. § 1.1244(c)–1 **Section 1244 stock defined.**
 \* \* \* \* \* \*
 (g) **Gross receipts.** \* \* \*
 \* \* \* \* \* \*
 (2) The requirement of subparagraph (1) of this paragraph need not be satisfied if for the applicable period the aggregate amount of deductions allowed to the corporation exceeds the aggregate amount of its gross income. But for this purpose the deductions allowed by section 172, relating to the net operating loss deduction, and by sections 242, 243, 244, and 245, relating to certain special deductions for corpo-

rations, shall not be taken into account. Notwithstanding the provisions of this subparagraph and of subparagraph (1) of this paragraph, pursuant to the specific delegation of authority granted in section 1244(e) to prescribe such regulations as may be necessary to carry out the purposes of section 1244, ordinary loss treatment will not be available with respect to stock of a corporation which is not largely an operating company within the five most recent taxable years (or such lesser period as the corporation is in existence) ending before the date of the loss. Thus, for example,

portion of the regulation deals with the fifth requirement for qualifying "Section 1244 stock" set forth in § 1244(c)(1)(E) of the Code, *supra.*

Section 1244(c)(1)(E) of the Code sets forth the general requirement that the corporation whose stock produces a loss to a taxpayer must have derived more than one-half of its aggregate gross receipts from sources "other than royalties, rents, dividends, interest, annuities and sales or exchanges of stock or securities . . . ." However, an exception to this requirement that at least 50 percent of gross receipts be from "non-passive" sources applies to a corporation whose allowable deductions exceed the amount of gross income. It is stipulated that BIC had no gross income and did have deductions. Thus, the taxpayers contend that the clear language of the statute brings BIC within the exception. The effect of the regulation is to deny § 1244 treatment to the stock of a loss corporation, otherwise within the exception, if the corporation is not "largely an operating company."

The statute contains no requirement that the loss be incurred with respect to stock of a corporation which is "largely an operating company." The taxpayers met each of the five requirements specified in the statute. They argue here, as in the district court, that the Commissioner of Internal Revenue as delegate of the Secretary of the Treasury had no authority to add a requirement which Congress did not include. The government responds that § 1244(e) of the Code empowered the Secretary to issue "legislative regulations," as opposed to merely interpretive regulations and that Treas.Reg. 1.1244(c)–1(g)(2) is a valid legislative regulation. Without conceding the validity of the regulation the taxpayers argue in the alternative that BIC was an operating company.

Section 1244 was added to the Internal Revenue Code as part of the Small Business Tax Revision Act of 1958. The provision for ordinary loss rather than capital gain treatment for investments in small business corporations which do not prove successful was "designed to increase the volume of outside funds which will be made available for the financing of small business." H.Rep.No. 2198, 85th Cong. 1st Sess. 1959–2 C.B., 709, 710; see *J. Paul Smyers,* 57 T.C. 189, 198 (1971). The same report contains this further statement with respect to eligibility for section 1244 treatment:

> Your committee also has imposed a restriction designed to limit this tax benefit to companies which are largely operating companies. Thus, the corporation, in the 5 years before the taxpayer incurs loss on the stock, must have derived more than half of its gross receipts from sources other than royalties, rents, dividends, interests, annuities, and the sale of stock or securities.

1959–2 C.B., p. 711.

The reference to sources other than royalties, rents, etc., tracks the language of § 1244(c)(1)(E) of the Code. Thus it appears that the House Ways and Means Committee equated the statutory limitation on sources of income to § 1244 corporations with a requirement that they be "largely operating companies."

This raises the question: may the Secretary by regulation make explicit that which the congressional sponsors of legislation have treated as implicit? It is clear that regulations may not be used to supply supposed omissions in a revenue act or to enlarge the scope of such a statute. *Busey v. Deshler Hotel Co.,* 130 F.2d 187, 190 (6th Cir. 1942). Nor may a regulation be used to alter or amend a statute by prescribing requirements which are inconsistent with its language. *Acker v. Commissioner of Internal Revenue,* 258 F.2d 568, 573 (6th Cir. 1958), *aff'd,* 361 U.S. 87, 80 S.Ct. 144, 4

---

assume that a person who is not a dealer in real estate forms a corporation which issues stock to him which meets all the formal requirements of section 1244 stock. The corporation then acquires a piece of unimproved real estate which it holds as an investment. The property declines in value and the stockholder sells his stock at a loss. The loss does not qualify for ordinary loss treatment under section 1244 but must be treated as a capital loss.

L.Ed.2d 127 (1959); 1 Mertens, *Law of Federal Income Taxation* (1974 Rev.) § 3.21, p. 46. However Congress often delegates to administrative officers, as in this case, the authority to issue regulations as necessary to carry out the purposes of a particular statute. 26 U.S.C. § 1244(e), *supra*. Regulations issued pursuant to such a delegation will be sustained if "reasonably related to the purposes of the enabling legislation." *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 369, 93 S.Ct. 1652, 1661, 36 L.Ed.2d 318 (1972); *Compton v. Tennessee Department of Public Welfare*, 532 F.2d 561, 564 (6th Cir. 1976). This court stated in *Goldman v. Commissioner of Internal Revenue*, 497 F.2d 382, 383 (6th Cir. 1974),

> When, as here, Congress has expressly delegated authority to the Commissioner to promulgate regulations under a specific Code section, the resulting legislative regulations are accorded even greater weight than that normally accorded interpretative regulations.

(citation omitted).

In addition to the provision for regulations contained in § 1244(e), the Internal Revenue Code contains, in section 7805(a), a broad delegation to the Secretary to "prescribe all needful rules and regulations for the enforcement of this title [Title 26 of the United States Code] . . . ." The Supreme Court, noting the congressional delegation of authority in § 7805(a), states in *United States v. Correll*, 389 U.S. 299, 307, 88 S.Ct. 445, 450, 19 L.Ed.2d 537 (1967),

> The rule of the judiciary in cases of this sort begins and ends with assuring that the Commissioner's regulations fall within his authority to implement the congressional mandate in some reasonable manner.

■■ It is apparent that the Commissioner, acting on behalf of the Secretary of the Treasury, was exercising authority delegated by Congress in promulgating Regulation 1.1244(c)–1(g). He was not merely interpreting § 1244(c)(1)(E) of the Code. Congress created a significant tax advantage in enacting § 1244, but it was intended to have narrow application. It was not intended to provide a vehicle for favorable tax treatment of losses suffered on passive investments or investments in large enterprises. Its purpose was to offer an incentive for investment of new funds in small businesses. Other provisions limit the size of corporations which may issue section 1244 stock. The purpose of § 1244(c)(1)(E) was to prevent a mere investment entity or holding company from qualifying. Treas. Reg. 1.1244(c)–1(g)(2) makes explicit that even where a corporation generates no gross receipts, the limitations of § 1244(c)(1)(E) nevertheless apply. Since the regulation implements one of the underlying purposes of the Act in a reasonable manner, the fact that "largely an operating company" is found in the legislative history rather than in the statutory language is unimportant. Compare *Acker v. Commissioner of Internal Revenue, supra*, 258 F.2d at 576. We conclude that the regulation relied upon by the district court is valid.

■ The second issue presents a little difficulty. BIC never engaged in any business operations. It invested most of its resources in National Cleveland. This investment resulted in the employment of Arthur Bates by National Cleveland. Nevertheless BIC was nothing more than a holding company or vehicle for investment. The only income to be anticipated by BIC from National Cleveland would be in the form of dividends, one of the types of "passive" income listed in § 1244(c)(1)(E). If National Cleveland had paid BIC for the services of either Alfred or Arthur Bates or if there had been some agreement specifying that the services were performed for National Cleveland on behalf of BIC the case would be much stronger for the taxpayers. In spite of BIC's control of National Cleveland, BIC remained only an investor, not an operating company. *Cf. Whipple v. Commissioner of Internal Revenue*, 373 U.S. 193, 203, 83 S.Ct. 1168, 10 L.Ed.2d 288 (1963).

■ The taxpayers have relied on rules and definitions related to Subchapter S corporations. Subchapter S (26 U.S.C. §§ 1371–1378) was included in the 1958 Act

and is concerned with small business corporations. However, the two statutes do not seek to accomplish the same purposes. Though some of the requirements for Subchapter S treatment resemble those for § 1244 treatment, the two are not *in pari materia*. The arguments based on Subchapter S are totally unpersuasive.

The judgment of the district court is affirmed.