T.C. Memo. 2003-93

UNITED STATES TAX COURT

T.P. AND NAJIEH R. CRIGLER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 9233-99.                    Filed March 28, 2003.

T.P. Crigler, pro se.

<u>James R. Rich</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, <u>Judge</u>:  Respondent determined a deficiency in
petitioners' Federal income tax of $19,675 and an accuracy-
related penalty under section 6662 of $3,935 for 1995.

The issues for decision are:

1.  Whether petitioners may deduct an ordinary loss of $100,000 under section 1244 for loss in value of petitioner's FabuGlass stock in 1995.  We hold that they may not.

2.  Whether petitioners are liable for the accuracy-related penalty for negligence under section 6662 for 1995.  We hold that they are.

Unless otherwise provided, section references are to the Internal Revenue Code in effect for 1995, and Rule references are to the Tax Court Rules of Practice and Procedure.  References to petitioner are to Mr. Crigler.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found. Petitioners resided in Chapel Hill, North Carolina, when they filed their petition.

A.  <u>FabuGlass, Inc.</u>

1.  <u>B.F. Lists, Inc.</u>

In 1981, petitioner incorporated B.F. Lists, Inc. (B.F. Lists), in Arkansas to obtain, rent, and market mailing lists for the retail sale of professional uniforms and accessories. Petitioner converted a rodeo arena in Conway, Arkansas, into a mail order office, warehouse, and shipping facility (the Conway premises) at a date not specified in the record.

2. <u>FabuGlass, Inc. and Crigler & Co.</u>

Petitioner changed the name of B.F. Lists to FabuGlass, Inc. (FabuGlass), in 1985, and he changed the name of FabuGlass to Crigler & Co. in 1996.[1]

Petitioner owned all of the stock of FabuGlass from 1987-98. The articles of incorporation adopted in 1985 state that FabuGlass was formed to manufacture, market, and distribute fiberglass-reinforced plastic products, accessories, and related items.

3. <u>FabuGlass' Activities</u>

FabuGlass manufactured fiberglass Jeep tops and related parts in 1985 and 1986 at the Conway premises. FabuGlass had serious business problems in 1985 and 1986 which petitioner tried to correct. In August 1987, FabuGlass agreed to supply Pender Boat Co. (Pender), a North Carolina company, with fiberglass molds for Jeep parts, and Pender agreed to furnish Jeep parts to FabuGlass. FabuGlass bought sixteen fiberglass Jeep parts from Pender in October and November 1987. Petitioner was not satisfied with the parts that Pender produced. Drug Enforcement Administration (DEA) officials in North Carolina apparently confiscated FabuGlass' molds from Pender on a date not stated in the record.

---

[1] For purposes of this opinion, we refer to the entity originally known as B.F. Lists as FabuGlass for all years.

FabuGlass reported $0 sales or costs of goods sold in 1989. It rented the Conway premises to an unidentified tenant for $66,000 in 1989.

FabuGlass purchased $922,370 of securities for investment in 1989. In 1989, FabuGlass also had receivables of $1,015, liquid assets of $899, and owned a building with a book value of $248,681 less accumulated depreciation of $125,228.

In 1990-95, FabuGlass derived income from renting real property and trading stocks and securities. Petitioner operated FabuGlass as a business consulting company in 1996 and 1997.

FabuGlass was an Arkansas corporation that had filed all required reports and paid all required fees and taxes as of the date of trial. It had not liquidated its assets or filed for bankruptcy protection as of the date of trial.

B.   AmRuss, Ltd.

In 1992 or 1993, Raymond Sawyer (Sawyer), petitioners' accountant, and petitioner attempted to do business in Russia through AmRuss, Ltd. (AmRuss). FabuGlass was not involved in petitioner's efforts to do business in Russia.

In 1991-94, Charles Layman (Layman) owned a company called Murphy Body Co. Murphy Body Co., AmRuss, and a Russian entity named Association Vnedrenie agreed to do business converting vehicles into refrigerated or armored trucks, ambulances, and other specially used vehicles in 1991-94. The contract between

Murphy Body Co., AmRuss, and Association Vnedrenie is not in evidence.  An "Addendum to Charter and By-Laws of Vnedrenie-Murphy" was prepared for petitioner's signature in his capacity as chairman of AmRuss.

On December 22, 1994, AmRuss agreed to sell an armored vehicle to a Russian entity named Bank Baltisky.  Petitioner signed the sales contract as president of AmRuss.

C.    Tax Returns for FabuGlass

Sawyer or his employees prepared the Federal corporate income tax returns for FabuGlass for 1990-93.  Petitioner gave Sawyer information relating to income, expenses, and various stock transactions to use in preparing the returns.  FabuGlass reported on its returns for 1990-93 that it was an investment company and that its business activity was investing in financial securities and real estate.

Petitioner prepared and signed the original 1994 return for FabuGlass.  FabuGlass reported on its 1994 return that its business activity was investments.  Sawyer or his employees prepared the first amended 1994 return for FabuGlass and added a net operating loss carryback but did not change other parts of the return.

FabuGlass reported that its total liabilities exceeded its assets for the period 1990-94.  FabuGlass reported the following amounts of gross income and deductions for 1990-94:

FabuGlass' Reported Gross Income and Deductions for 1990-94

| Year | Gross income | Deductions |
|------|-------------|-----------|
| 1990 | $(818,321) | $31,227 |
| 1991 | (1,034,984) | 89,818 |
| 1992 | 209,518 | -- |
| 1993 | 102,031 | -- |
| 1994 | (13,301) | 16,070 |
| Total | (1,555,057) | 137,115 |

FabuGlass reported $0 gross receipts or sales in 1990, 1991, and 1992, $25,220 in 1993, and $0 on the original and first amended 1994 returns.  FabuGlass reported $0 costs of goods sold on its 1990, 1991, 1992, 1993, and original and first amended 1994 returns.  FabuGlass claimed no deductions for salaries, wages, rents, and advertising on its 1990-94 returns.

FabuGlass reported assets on its returns as follows:

| Item | 1990 | 1991 | 1992 | 1993 | [1]1994 |
|------|------|------|------|------|------|
| Cash | -- | -- | -- | 16 | -- |
| Inventories | -- | -- | -- | $166,353 | 166,353 |
| Investments | $1,068,279 | $144,932 | $1,794 | 22,270 | 3,075 |
| Buildings and depreciable assets | 248,681 | 248,681 | 248,681 | -- | -- |
| less accumulated depreciation | (129,842) | (134,456) | (134,456) | -- | -- |
| Total assets | 1,187,118 | 259,157 | 116,019 | 188,639 | 169,428 |

[1] FabuGlass reported these amounts on its original and first amended 1994 returns.

FabuGlass' tax returns for 1990-94, a real estate contract, and a stipulated rental receipt show that less than 50 percent of FabuGlass' aggregate gross receipts for 1990-94 were from sources other than royalties, rents, dividends, interest, annuities, and

sales or exchanges of stock or securities (nonoperating sources)

as follows:

| 1990 | Nonoperating sources | Other sources |
|---|---|---|
| Dividends | $39,955 | -- |
| Rent receipts | 27,500 | -- |
| Gains from stock transactions | 22,117 | -- |
| Commissions | -- | $3,000 |
| Totals | 89,572 | 3,000 |

| 1991 | | |
|---|---|---|
| Dividends | $13,853 | -- |
| Rent receipts | 2,760 | -- |
| Gains from stock transactions | 334,916 | -- |
| Real estate sale[1] | -- | $5,000 |
| Totals | 351,529 | 5,000 |

| 1992 | | |
|---|---|---|
| Dividends | $10,691 | -- |
| Interest | 212 | -- |
| Rent receipts[2] | 14,779 | -- |
| Gains from stock transactions | 611 | -- |
| Real estate sales | -- | $250,000 |
| Totals | 26,293 | 250,000 |

| 1993 | | |
|---|---|---|
| Dividends | $504 | -- |
| Gains from stock transactions | 18,939 | -- |
| Sale | -- | 25,220 |
| Real estate sales | -- | $102,000 |
| Totals | 19,443 | 127,220 |

| 1994 | | |
|---|---|---|
| Dividends | $304 | -- |
| Boat sales | -- | $22,312 |
| Totals | 304 | 22,312 |

|      | Total from nonoperating sources | Total from other sources |
|------|--------------------------------:|-------------------------:|
| 1990 | $89,572 | $3,000 |
| 1991 | 351,529 | 5,000 |
| 1992 | 26,293 | 250,000 |
| 1993 | 19,443 | 127,220 |
| 1994 | 304 | 22,312 |
| Totals | 487,141 | 407,532 |

[1] FabuGlass did not report this item on its 1991 tax return. However, the parties stipulated to the contract which shows that FabuGlass received $5,000 in 1991 from a real estate sale.

[2] The parties stipulated that FabuGlass received rent receipts of $14,779 in 1992.

Sawyer prepared FabuGlass' tax return for 1995. Petitioner gave Sawyer a summary of income, expenses, and various transactions (e.g., sales of stock and real property) to use in preparing the 1995 return. FabuGlass reported that it was an investment company. FabuGlass reported the following on its 1995 return:

Assets and Liabilities

| Item | Beginning of year | End of year |
|------|------------------:|------------:|
| Cash | -- | $396 |
| Inventories | $166,353 | 166,353 |
| Depreciable, depletable, and intangible assets | 3,075 | 3,075 |
| Total assets | 169,428 | 169,824 |
| Loans from stockholders | 2,026,017 | 2,431,761 |
| Capital stock | 430,258 | 25,000 |
| Retained earnings | (2,286,847) | (2,286,937) |
| Total liabilities and stockholders' equity | 169,428 | 169,824 |

On their 1995 return, petitioners reported a $405,238 loss attributable to petitioner's FabuGlass stock and claimed a $100,000 deduction[2] under section 1244.

The examination of petitioners' 1995 income tax return began in 1997. Respondent issued a notice of deficiency on February 18, 1999, in which respondent determined that petitioners were not entitled to a $100,000 deduction under section 1244.

On November 8, 1999, petitioner prepared and filed a second amended return for 1994 for FabuGlass. On it, FabuGlass reported that its business activity was the manufacture of "Co-Production Transp. Products" and that its product or service was "vehicle conversions w/ R.P." Also on that return, FabuGlass reported (for the first time) (1) income of $22,312 from the sale of boats, costs of goods sold of $31,643, and expenses of $16,070 for travel to Russia, and (2) total assets of $139,325, consisting of $134,710 of inventories (2 boats), $1,540 of export items consigned to Russia, and $3,075 of investments.

Sawyer prepared petitioners' individual income tax returns for 1990-96, but not FabuGlass' return for 1996.

FabuGlass reported on its 1996 and 1997 returns that its business activity was consulting.

---

[2] The maximum annual amount that may be deducted under sec. 1244 is $100,000 for a husband and wife filing a joint return for that year. Sec. 1244(b).

OPINION

A.  Whether Petitioner's FabuGlass Stock Qualifies as Section 1244 Stock

1.  Requirements for Section 1244 Stock

Generally, when corporate stock becomes worthless, the loss is a capital loss.  However, an individual who has what would otherwise be a capital loss on stock that qualifies as section 1244 stock may treat up to $50,000 ($100,000 in the case of a joint return) of the loss as an ordinary loss.  Sec. 1244(a), (b), (d)(1)(B).  Section 1244 stock is stock of a domestic corporation if:  (1) At the time that stock is issued, the corporation had not received money or other property in excess of $1 million for its stock as a contribution to capital or as paid-in surplus; (2) the stock was issued for money or other property other than stock or securities; and (3) the corporation, during its 5 most recent taxable years (or, if less, the period during which the corporation has been in existence) ending before the date the loss in question was sustained, derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities.  Sec. 1244(c)(1).  The gross receipts requirement does not apply if, for the 5-year period described above, the amount of deductions allowed by Chapter 1 (other than by sections 172, 243, 244, and 245) exceeds the amount of the corporation's gross income.  Sec. 1244(c)(2)(C).

Congress intended section 1244 to encourage taxpayers to invest new funds in small businesses, rather than provide favorable tax treatment for losses suffered by investment and holding companies.  H. Rept. 2198, 85th Cong., 1st Sess. (1958), 1959-2 C.B. 709, 711; Bates v. United States, 581 F.2d 575, 580 (6th Cir. 1978); Davenport v. Commissioner, 70 T.C. 922, 926 (1978).

The Secretary is authorized to prescribe regulations needed to carry out the purposes of section 1244.  Sec. 1244(e). Pursuant to that authority, the Secretary issued regulations which provide that the taxpayer must show that the corporation was "largely an operating company"[3] during the 5-year period described above even if the gross receipts requirement does not

---

[3] Congress intended to limit application of sec. 1244 to companies which are largely operating companies.  The legislative history states in pertinent part:

III. GENERAL EXPLANATION

\*   \*   \*   \*   \*   \*   \*

Section 2. Losses on Small-Business Stock

\*   \*   \*   \*   \*   \*   \*

Your committee also has imposed a restriction designed to limit this tax benefit to companies which are largely operating companies.  Thus, the corporation, in the 5 years before the taxpayer incurs the loss on the stock, must have derived more than half of its gross receipts from sources other than royalties, rents, dividends, interest, annuities, and the sale of stock or securities.  [H. Rept. 2198, 85th Cong., 1st Sess. (1958), 1959-2 C.B. 709, 711; emphasis added.]

apply because the corporation's deductions exceeds its net income.  Sec. 1.1244(c)-1(e)(2), Income Tax Regs.; <u>Davenport v. Commissioner</u>, <u>supra</u> at 928-929.  This provision of the regulations is valid.  <u>Davenport v. Commissioner</u>, <u>supra</u>.

2.    <u>Contentions of the Parties</u>

Petitioners contend that petitioner's FabuGlass stock qualifies as section 1244 stock and that they may deduct $100,000 as an ordinary loss under section 1244(a) in 1995.  Respondent contends that petitioner's FabuGlass stock does not qualify as section 1244 stock because:  (a) FabuGlass derived less than 50 percent of its aggregate gross receipts from sources other than nonoperating sources, and FabuGlass' gross income exceeded its deductions for 1990-94; and (b) FabuGlass was not largely an operating company during 1990-94.  Petitioners contend that FabuGlass's deductions exceeded its gross income for 1990-94 and that FabuGlass was largely an operating company during 1990-94.  Petitioners bear the burden of proving that petitioner's FabuGlass stock qualifies as section 1244 stock.  Rule 142(a)(1).[4]

---

[4]  Sec. 7491 applies to court proceedings arising in connection with examinations commencing after July 22, 1998. Sec. 7491(a) does not apply here because the examination of petitioners' 1995 return began in 1997.

3.  Whether FabuGlass Was Largely an Operating Company in 1990-94

    a.  Whether FabuGlass Had Operating Assets, Sales, or Paid Salaries in 1990-94

FabuGlass reported on its returns for 1990-94 that it had no operating assets and paid no salaries.  This suggests that FabuGlass was not an operating company.  FabuGlass reported total sales of $30,312 on its 1990-94 returns.  That amount is insignificant compared to the $1,555,057 it reported as net losses from stock transactions for those years.

    b.  Whether FabuGlass' Tax Returns Establish That It Was an Investment Company

FabuGlass reported on its 1990-95 returns and its first amended 1994 return that it was an investment company. Petitioners contend that we should disregard references to FabuGlass as an investment company on those returns because FabuGlass was not authorized by its articles of incorporation to engage in investment activities.

We disagree.  First, petitioner, as the sole owner of FabuGlass stock in 1990-95 and preparer of FabuGlass' original 1994 return, cannot now disavow those returns without cogent proof that they are incorrect.  Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. per curiam T.C. Memo. 1968-126; Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975); Kaltreider v. Commissioner, 28 T.C. 121 (1957), affd. 255 F.2d 833 (3d Cir.

1958).  Second, the Instructions to Forms 1120 and 1120-A, U.S. Corporation Income Tax Return, Codes for Principal Business Activity, for 1990-95 require a corporation to report on its tax return its business activity from which it derives its largest percentage of total receipts, not the business activity authorized in its articles of incorporation.

We conclude that FabuGlass correctly reported that it was an investment company in 1990-95.

c.    Whether FabuGlass Operated in Russia in 1990-94

Petitioners contend that FabuGlass was largely an operating company in 1990-94 because it operated in Russia in those years. Petitioner testified that FabuGlass tried to sell armored vehicles and refrigeration trucks to Russian companies.  However, his testimony on this point was vague.  The record shows that AmRuss, and not FabuGlass, tried to do business in Russia. Sawyer, who prepared FabuGlass' original income tax returns for 1990-95, testified that he did not know that FabuGlass was trying to do business in Russia, but that AmRuss did try to do business there.  He testified that he and petitioner considered doing business in Russia in 1992 or 1993 on behalf of a company called AmRuss.

Petitioners contend that Exhibit 39-P, a contract dated December 22, 1994, shows that FabuGlass was operating in Russia in 1994.  We disagree.  Exhibit 39-P is a contract in which Bank Baltisky agreed to buy an armored vehicle from AmRuss.  FabuGlass

was not a party to that contract.  Petitioner signed the contract as president of AmRuss.

Layman testified that Murphy Body Co. and petitioner, on behalf of FabuGlass, tried to do business in Russia in 1991-94 with an entity named Association Vnedrenie.  We believe that Layman's testimony that FabuGlass was involved in Russia was mistaken because the documentary evidence refers to AmRuss, not FabuGlass.  No contract between Murphy Body Co. and Association Vnedrenie is in evidence.  The record contains an "Addendum to Charter and By-Laws of Vnedrenie-Murphy" that lists Murphy Body Co., AmRuss, and Association Vnedrenie as parties to that addendum and refers to petitioner as chairman of AmRuss.  No documentary evidence shows that FabuGlass did business in Russia.

Petitioners point out that FabuGlass claimed deductions for doing business in Russia on its second amended return for 1994. Petitioners contend that petitioner was merely correcting errors on the original and first amended returns for 1994 and that the second amended return is correct.  We disagree.  Petitioner filed FabuGlass' second amended return for 1994 on November 8, 1999, almost 9 months after respondent issued the notice of deficiency. This suggests that FabuGlass claimed those deductions simply to support petitioners' claim that FabuGlass was an operating company in 1990-94 because it operated in Russia.

Respondent contends in the alternative that, if we find that FabuGlass was active in Russia in 1990-94, then the FabuGlass

stock did not become worthless in 1995 because those alleged activities continued after 1994. Petitioners argue that respondent's contention is a concession that FabuGlass was largely an operating company in Russia in 1990-94. We disagree. Respondent's contention was contingent on our finding that FabuGlass operated in Russia in 1990-94. We have not so found.

d.  Whether FabuGlass Stopped Doing Fiberglass-Related Business in 1995

Petitioner contends that FabuGlass stopped doing fiberglass-related business in 1995 when he decided that FabuGlass would no longer conduct any fiberglass-related business. We disagree. There is no evidence that FabuGlass did business related to fiberglass production or sales after November 1987.

The record shows no activity by FabuGlass in 1988 except for petitioner's letter to the U.S. Attorney to try to retrieve the FabuGlass molds that the DEA had seized. FabuGlass reported no sales or costs of goods sold in 1989. In 1989, it rented out its Conway premises for $66,000 and invested $922,370 in securities. The fact that FabuGlass invested nearly $1 million in 1989 suggests that it did not need those funds to pay operating costs. The fact that FabuGlass rented out its Conway premises suggests that FabuGlass was no longer using the Conway premises for manufacturing or other business activities in 1990-94 because it was no longer an operating company.

Petitioner testified that FabuGlass correctly reported on its second amended return for 1994 that its business activity was the production of reinforced plastic materials.  We are not convinced by that testimony because, as discussed above, the weight of the evidence shows that FabuGlass was an investment company and had stopped doing fiberglass-related business before 1990.

    e.    FabuGlass Was Not Largely an Operating Company in 1990-94

We conclude that FabuGlass was not largely an operating company in 1990-94.

4.    Conclusion

We conclude that petitioner's FabuGlass stock was not section 1244 stock,[5] and thus, petitioners may not deduct an ordinary stock loss of $100,000 under section 1244 in 1995.[6]

---

[5]  In light of our conclusion, we need not decide respondent's contentions that petitioners have not established (1) that the stock was issued for money or other property (other than stock or securities), (2) that FabuGlass satisfied the 50 percent gross receipts test, and (3) whether FabuGlass stock became worthless in 1995.

[6]  Petitioners may not deduct any losses under sec. 165(g) relating to the worthlessness of petitioner's FabuGlass stock because the record does not contain sufficient information to compute petitioner's basis in that stock in 1995.  Petitioner's testimony leaves many unanswered questions about his basis.  The only documents in the record to support petitioners' computation of basis are the contract showing the 1980 purchase price of real property ($225,000) that petitioner contributed to FabuGlass in 1985 and bank statements showing transfers from petitioner totaling $111,000 which petitioners contend were to the First National Bank of Conway.  Petitioners have not shown that the
(continued...)

B.  Whether Petitioners Are Liable for the Accuracy-Related
Penalty for 1995

Petitioners contend that they are not liable for the
accuracy-related penalty for negligence for 1995 because they
relied on Sawyer's advice.  We disagree.

A taxpayer may be relieved of liability for the accuracy-
related penalty if the taxpayer shows that he or she had
reasonable cause for the understatement and acted in good faith.
Reliance on the advice of a qualified tax professional may
constitute reasonable cause if that reliance was reasonable and
the taxpayer acted in good faith.  Sec. 6664(c); sec. 1.6664-
4(a), Income Tax Regs.  To establish good faith reliance on the
advice of a competent adviser, a taxpayer must show that he or
she provided the return preparer with complete and accurate
information and an incorrect return resulted from the preparer's
mistake.  Sec. 6662; DeCleene v. Commissioner, 115 T.C. 457, 477
(2000); Neonatology Associates, P.A. v. Commissioner, 115 T.C.
43, 99 (2000), affd. 299 F.3d 221 (3d Cir. 2002); sec. 1.6662-
3(a), Income Tax Regs.

Petitioners contend that they gave Sawyer complete and
accurate information to prepare their returns properly.  We

---

⁶(...continued)
amount of the mortgage and depreciation on the property at the
time of the transfer were less than the $225,000 purchase price.
Petitioners also have not shown why transfers to a bank add to
petitioner's basis in his FabuGlass stock.  We conclude that the
record contains insufficient information from which to compute
petitioner's basis.

believe petitioners have not proved this.  There is no evidence that petitioners gave Sawyer information showing that petitioner's FabuGlass stock qualified under section 1244, i.e., information showing that FabuGlass derived more than 50 percent of its aggregate gross receipts from sources other than royalties, rents, dividends, interest, annuities, and sales or exchanges of stocks or securities for 1990-94, that its deductions exceeded its income for 1990-94, or that it was largely an operating company in 1990-94.  Thus, we conclude that petitioners are liable for the accuracy-related penalty for 1995.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.