T.C. Summary Opinion 2021-27

UNITED STATES TAX COURT

DAVID EVAN USHIO AND JUDITH S. USHIO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 23021-17S.                    Filed August 16, 2021.

Sandra M. Robb, for petitioners.

Gregory Michael Hahn and Scott W. Forbord, for respondent.

SUMMARY OPINION

LEYDEN, Special Trial Judge: This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the petition

was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

In a notice of deficiency dated August 3, 2017, the Internal Revenue Service (IRS)[2] determined deficiencies in Mr. and Ms. Ushio's Federal income tax of $5,060 and $9,188 and section 6662(a) accuracy-related penalties of $1,012 and $1,838 for 2012 and 2013, respectively.  After concessions,[3] the sole issue for

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]The Court uses the term "IRS" to refer to administrative actions taken outside of these proceedings.  The Court uses the term "respondent" to refer to the Commissioner of Internal Revenue, who is the head of the IRS and is respondent in this case, and to refer to actions taken in connection with this case.

[3]Mr. and Ms. Ushio concede that they received but did not report $10,000 in gross receipts that should have been reported on the Schedule C, Profit or Loss From Business, filed with their 2012 return.  Mr. and Ms. Ushio also concede they are not entitled to deduct the following expenses on their Schedules C:  (a) car and truck expenses of $5,667 and $7,707 for 2012 and 2013, respectively; (b) other expenses of $8,814 and $6,614 for 2012 and 2013, respectively; (c) additional travel expenses of $3,369 and $17,099 for 2012 and 2013, respectively; (d) utilities of $3,411 for 2012; (e) meals and entertainment of $8,154 for 2013; and (f) other expenses of $5,300 for tax year 2013.  Respondent concedes that Mr. and Ms. Ushio are entitled to deduct legal and professional service expenses of $90 and meals and entertainment expenses of $2,525 on the Schedule C for 2012.  Mr. and Ms. Ushio concede they are not entitled to deduct meals and entertainment expenses of $5,227 on the Schedule C for 2012.

decision is whether Mr. and Ms. Ushio may deduct an ordinary loss of $50,000 under section 1244 for the worthlessness of Mr. Ushio's Parker Capital Holdings Group, Inc. (PCHG) stock for 2012 or as respondent contends deduct a capital loss of $3,000 for both 2012 and 2013.[4]  The Court concludes that Mr. and Ms. Ushio are not entitled to an ordinary loss deduction of any amount for 2012 with respect to their stock in PCHG but are entitled to deduct $3,000 as a capital loss for both 2012 and 2013.

## Background

Some of the facts have been stipulated.  Mr. and Ms. Ushio resided in Colorado when they filed their petition.

### I.   PCHG

In 2009 PCHG was incorporated in South Carolina.  During its existence PCHG did not have any gross receipts.  On October 24, 2009, Mr. Ushio signed a stock subscription agreement with PCHG to buy 50 shares of its class C common

---

[4]The other adjustments in the notice of deficiency are computational and will not be discussed.

stock for $1,000 each, totaling $50,000.[5]  PCHG ceased business in June 2012 and was administratively dissolved by the State of South Carolina in 2013.

## II.     PCHG's Investment in LifeGrid Solutions, LLC

PCHG planned on investing in LifeGrid Solutions, LLC (LGS), for the purpose of enabling LGS and Lifetime Solutions, LLC, a Nevada limited liability corporation, to obtain rights in a process related to alternative energy.  PCHG signed an undated agreement with LGS and Lifetime Solutions that stated that Lifetime Solutions had entered into an agreement with D4 Energy Group, Inc., to obtain the rights to the D4 process, that LGS wanted to obtain the right to use the D4 process in its own projects, and that Lifetime Solutions and LGS had started discussing and negotiating the use of the D4 process.  PCHG had invested $125,000 in LGS and, pursuant to the undated agreement, intended on investing a total of $400,000.  That agreement also stated that LGS, PCHG, and Lifetime Solutions agreed to "participate in, develop, operate and conduct business related to alternative and renewable energies utilizing D4 Energy Group technologies and processes on an exclusive basis" and not to circumvent or compete unless they obtained written permission.

---

[5]Funds were transferred from Mr. Ushio's Bank of Hawaii account to Parker SCItech Group, LLC (PSG), and PSG transferred those funds to PCHG to complete the purchase of the stock by Mr. Ushio.

On September 10, 2009, PSG, PCHG, and LGS agreed in writing "to establish the profit sharing and technology transference relationship and non-compete terms between PSG, * * * [PCHG] and their respective principal partners and Officers." PSG agreed to distribute 30% of all LGS energy-related distributions PSG received directly to PCHG in consideration of an investment by PCHG in PSG of $360,000.[6]

III.   Notice of Deficiency

The IRS selected Mr. and Ms. Ushio's 2012 and 2013 Federal income tax returns for examination on May 8, 2015. After the examination, the IRS issued Mr. and Ms. Ushio a notice of deficiency dated August 3, 2017, which determined deficiencies of $5,060 and $9,188 and section 6662(a) accuracy-related penalties of $1,012 and $1,838 for tax years 2012 and 2013, respectively. The notice of deficiency adjusted or disallowed Schedule C expenses and itemized deductions Mr. and Ms. Ushio claimed for tax years 2012 and 2013, and made several computational adjustments. The notice of deficiency further allowed a capital loss deduction of $3,000 for both 2012 and 2013 with respect to the worthlessness of the PCHG stock for 2012.

---

[6]The amount of the investment stated in this agreement was different from the amount PCHG had intended to invest. The agreement referenced an operating agreement of LGS, but the record does not include that agreement.

Mr. and Ms. Ushio had not claimed a deduction with respect to the PCHG stock on either their 2012 or 2013 joint Federal income tax return.[7] After the IRS examined those returns and proposed the $3,000 capital loss deductions for both 2012 and 2013, Mr. and Ms. Ushio raised, for the first time, their entitlement to an ordinary loss deduction of $50,000 for 2012 with respect to the worthlessness of their PCHG stock. They asserted that their PCHG stock qualified as section 1244 stock. The IRS determined that Mr. and Ms. Ushio had not proven that the PCHG stock qualified as section 1244 stock and, therefore, were not entitled to deduct an ordinary loss of $50,000 for 2012.

## Discussion

### I.     Burden of Proof

Deductions are a matter of legislative grace, and taxpayers bear the burden of proving entitlement to any deductions claimed. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Under section 7491(a), the burden of proof may shift to the Commissioner if the taxpayers produce credible evidence with respect to any relevant factual issue and meet other requirements. Mr. and Ms. Ushio have

---

[7]Mr. Ushio was notified that his stock in PCHG was worthless. The PCHG stock became worthless in 2012 when PCHG ceased business operations.

neither argued that section 7491(a) applies nor established that its requirements are met. The burden of proof as to whether their PCHG stock qualifies as section 1244 stock so they can deduct a $50,000 ordinary loss remains with them. See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).

II.     Deduction for Worthless PCHG Stock

Section 165(g)(1) generally provides that if stock which is a capital asset becomes worthless, the resulting loss should be treated as a loss from the sale or exchange of a capital asset on the last day of the taxable year. In the case of an individual taxpayer, losses on the sale of capital assets are allowed pursuant to section 1211(b) but only to the extent of gains from sales of those capital assets. If the losses exceed the gains, the allowed deduction for the losses is limited to the lower of $3,000 or the excess of the losses over the gains may be deducted. Sec. 1211(b). Any excess of such losses may be carried forward to and deducted for future years. Sec. 1212(b).

Pursuant to section 1244(a) an individual taxpayer is allowed to treat a loss from section 1244 stock as an ordinary loss. Thus, where section 1244 applies the character of the stock loss as an ordinary loss avoids the capital loss limitations of section 1211(b). An individual who proves that his or her stock qualifies as section 1244 stock may deduct $50,000 ($100,000 in the case of a joint return) of the loss

as an ordinary loss with respect to the worthlessness of the stock. Secs. 165(g), 1244(a), (b), (d)(1)(B).

Section 1244 stock is stock of a domestic corporation if: (1) when the stock was issued the corporation was a small business; (2) the stock was issued for money or other property (other than stock and securities); and (3) during the five most recent taxable years before the loss was sustained, the corporation derived more than 50% of its aggregate gross receipts from sources other than royalties, rents, dividends, interests, annuities, and sales or exchanges of stocks or securities. Sec. 1244(c)(1). The gross receipts requirement does not apply if for the five-year period the amount of deductions allowed by chapter 1 (other than sections 172, 243, and 245) exceeds the amount of the corporation's gross income. Sec. 1244(c)(2)(C).

Congress intended section 1244 to encourage taxpayers to invest new funds in small businesses, rather than provide favorable tax treatment for losses suffered by investment and holding companies. Bates v. United States, 581 F.2d 575, 579-580 (6th Cir. 1978) (citing H.R. Rept. No. 85-2198 (1958), 1959-2 C.B. 709, 710); Davenport v. Commissioner, 70 T.C. 922, 927 (1978) (citing H.R. Rept. No. 85-2198, supra, 1959-2 C.B. at 711). The Secretary issued regulations which provide that the taxpayer must show that the corporation was "largely an operating

company" during the five-year period described above even if the gross receipts requirement does not apply because the corporation's deductions exceed its net income. Sec. 1.1244(c)-1(e)(2), Income Tax Regs.

The record shows that the PCHG stock was issued for money. However, the record does not support a claim that the other two requirements of section 1244 were met. PCHG was not a small business. For a corporation to be a small business corporation under section 1244 the aggregate amount of money and other property (other than stock and securities) received by the corporation for stock must not exceed $1 million. Sec. 1244(c)(3)(A). The determination shall be made as of the time of the issuance of the stock in question and includes amounts received for all stock issued up to that date. Id. Mr. and Ms. Ushio presented a document that they claimed showed that the aggregate amount of money and other property that PCHG received for its stock did not exceed $1 million. However, that document is undated and was not adequately explained further. The document includes a column titled "Cash Input" and a column titled "Deferred Pay". Mr. and Ms. Ushio assert that the deferred payment was not made and therefore the amount paid for the PCHG stock did not exceed $1 million. However, the evidence does not support that assertion. Therefore, Mr. and Ms. Ushio have not proven that the amount of money that was paid for the PCHG stock did not exceed $1 million.

Further, during its existence more than 50% of PCHG's aggregate gross receipts were not from sources other than royalties, rents, dividends, interests, annuities, and sales or exchanges of stocks or securities. In fact PCHG could not meet this requirement because it did not have any gross receipts during its existence and failed to operate largely as an operating company. Mr. and Ms. Ushio argue that it was PCHG's intention to engage as an operating company in a business related to alternative energy. However, the record is devoid of any evidence to prove that and, in fact, a signed agreement in the record indicates that PCHG was to receive a return on its investment in LGS.

Mr. and Ms. Ushio have failed to show that Mr. Ushio's stock in PCHG qualified as section 1244 stock. Accordingly, the Court concludes that they are not entitled to an ordinary loss deduction of any amount for 2012 with respect to their stock in PCHG. Rather, as determined by respondent Mr. and Ms. Ushio are entitled to deduct $3,000 as a capital loss for both 2012 and 2013.

The Court has considered all the parties' arguments, and, to the extent not addressed herein, the Court concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>Decision will be entered under</u>

<u>Rule 155</u>.